HENRY FOX, ADMINISTRATOR, vs. THE TOWN OF GLASTENBURY.

The rule that a party who would recover for an injury caused by the negligence of another, must show that his own negligence has not contributed to cause the injury, is a stern and unbending rule, which has been settled by a long series of adjudged cases.

The inquiry whether, in a particular case, a party conducted with ordinary care, always involves the consideration of the difficulties and obstacles to be encountered, his knowledge of their existence, and his means and power to overcome them; and if men of ordinary prudence would regard the ability of the party insufficient for the purpose, without hazard, there is want of ordinary care in making the attempt.

Two women attempted to drive over a causeway laid across a cove, and leading to a ferry in the Connecticut river. There was a freshet in the river, and the water was rising rapidly, and already covered the causeway. The water was also very turbid, and there was a strong current through the cove. The causeway was twenty-five rods long and nineteen feet wide, and there was a bridge about nine rods from the entrance, raised above the level of the causeway, and then standing above the water. The women lived in the neighborhood and were acquainted with the road. Before driving on the causeway they inquired of a woman who lived close by, whether she should dare to cross, to which she replied that she should not unless she had a very gentle horse. The women drove in and reached the bridge, the water rising to the hubs of the fore wheels of the wagon. Here they stopped for a while, and could easily have obtained assistance to enable them to turn back. Beyond the bridge there was nothing visible to indicate the line of the road. They passed on, soon became alarmed and bewildered, and drove off the causeway, and one of the women was drowned. In a suit brought by her administrator against the town, to recover damages for the injury, on the ground that it was caused by the negligence of the town in not keeping up a railing along the causeway, and in which the jury rendered a verdict for the plaintiff, a new trial was granted for a verdict against evidence, on the ground that the deceased had been guilty of want of ordinary prudence in attempting to pass over the causeway in such circumstances.

ACTION on the statute with regard to highways and bridges, brought by the plaintiff, as administrator of Harriet Fox, to recover damages for the loss of her life by reason of the negligence of the defendants in not maintaining a railing along the sides of a causeway, which was a part of a public highway of the town. The case is sufficiently stated in the opinion of the court. The jury rendered a verdict for the plaintiff, and the defendants moved for a new trial for a verdict against evidence.

*L. F. Robinson* and *C. Chapman,* in support of the motion.

*T. C. Perkins* and *Hubbard,* contra.

SANFORD, J. We have no intention to disturb the current of our decisions in regard to the granting of new trials for verdicts against evidence. Nor do we mean to say that the highway on which this deplorable accident occurred, was not " so raised above the surface of the adjoining ground as to endanger the safety of travelers," nor that it was adequately protected by a fence or railing on its sides, as the law requires. Rev. Stat., tit. 24, § 7. Indeed, a majority of us are of opinion that the town had been culpably negligent in regard to such protection. But upon a very careful examination of the evidence before us, we are satisfied that, however negligent the defendants may have been, the unfortunate woman who lost her life, essentially contributed to the production of that result by her own culpable imprudence and indiscretion; so that upon the well established principles of law, promulgated and recognized by this court in many cases, the plaintiff was not entitled to the verdict which he obtained.

An inlet from Connecticut river, called the cove, runs up into the main land in the town of Glastenbury. About twenty-seven rods from its mouth, a highway had been laid through this cove to the Wethersfield ferry, and a causeway constructed thereon for the accommodation of the public travel. The causeway was about twenty-five rods long, and nineteen feet wide, was raised about two feet above the ordinary surface of the water, and there was a bridge about nine rods from the easterly end of it. The water in the cove, along the sides of the causeway, was ordinarily about one foot deep, but in times of freshet it frequently rose so high as to submerge the causeway, and render its passage perilous and sometimes impossible.

The general course or bearing of the causeway from the east end to a point about two rods west of the bridge, was about S. 87° W; it then curved toward the north and struck the elevated ground, on the west side of the cove, at a point about

N. 60° W. from the first mentioned point, two rods west of the bridge. It was a little higher east of the bridge than west of it. The deceased and her companion, Mrs. Clarinda Fox, had for several years resided about half a mile from the east end of the causeway, and one of them, at least, had repeatedly crossed it. About three o'clock in the afternoon of the 6th of August, 1856, having procured a horse and wagon, they started to go over the causeway, from the main land to the ferry. There was a freshet in the river, and the water had in consequence risen in the cove so as to cover the causeway, was rising rapidly, and there was a strong wind. The deceased and her companion stopped in front of the house of Mrs. French, a short distance from the causeway, but in full view of it, and there observed that the water was running over the causeway, and that the wind was high. The deceased inquired of Mrs. French whether people crossed there that day, to which Mrs. F. replied that they had, but that she had seen no one pass that way that afternoon, and that she had not before noticed that the water was over the road. The deceased then inquired of Mrs. F. if she would dare to cross. Mrs. F. replied that she would be afraid, unless she had a very gentle horse; and the deceased remarked that their horse was perfectly gentle.

We deem this conversation of some importance, because it shows that, while these ladies were encouraged to go on, by the information that others had passed before them, and by the fact that they had a gentle horse, they were not betrayed into their perilous undertaking, either by the apparent safety of the road, or by their own inattention to its condition, until it was too late to avoid it altogether; and that when they were entirely beyond the reach of danger, and could, with but little inconvenience, have avoided it, they deliberately determined to encounter and risk whatever of it might beset their way.

As they approached the causeway, the cove and the condition of the water in it could not have escaped their notice. They saw, and observed, that the causeway was entirely submerged, that a swift and strong current of turbid water

was passing over it, that there was no rail or visible object of any kind, above the surface of the water, on the sides of the causeway, by which they could be protected or guided in their course, and the depth of the water it was obviously impossible for them, before they went into it, with any degree of accuracy, to calculate or determine. East of the bridge, the water rose to the hubs of the fore wheels of their wagon, but they reached the bridge in safety. The bridge was raised about two feet and a half above the level of the causeway. On the bridge they stopped, noticed and remarked upon the height of the water and the rapidity of its current, and felt some degree of alarm, but concluded to proceed. As they drove from the bridge into the water on the west side of it, they began to apprehend the extent of their danger, and became frightened; the horse stopped; they urged him forward with the whip, and becoming more frightened they probably attempted to turn around, and went off the causeway, nearly at a right angle with it, into the deep water on the north side. These facts seem to us fully proved by the evidence. And we think that in driving upon the causeway at all, even easterly of the bridge, submerged as they saw it was, and with nothing visible above the surface of the water to indicate its true location, these ladies disregarded the dictates of ordinary prudence and discretion.

And surely, when upon the bridge, in full view of the scene before them, and aware, as they must have been, of the accumulated and increasing dangers in their path, and especially with the knowledge which they then possessed of the impossibility of seeing the road, because of the turbid condition and ruffled surface of the water, and the rapidity of its current, they determined to proceed, and drove into the stream, their conduct was far below the standard of ordinary prudence. They voluntarily assumed the risk and all the consequences of their indiscretion.

The bridge was twenty-four, feet long, and fourteen feet wide between the railings. On this bridge they were safe; and if they could not, unaided, have turned around and retraced their steps, they could, and should have remained where they

were, until relieved from their unpleasant but not perilous situation. And again, when, after they had entered the water west of the bridge, their horse, true to the instincts of his noble nature, faltered, and stood still, they should have heeded his kindly admonition, and there waited for assistance and deliverance, instead of forcing the animal forward to his fate. The boat, by means of which one of them was rescued, with two boys in it, was sailing close at hand; a wagon, with two men in it, was approaching the causeway from the west; and the residence of Mrs. French, with whom they had just been conversing, was within the reach of their voices. Their outcry would have brought almost immediate relief.

In view of all the facts and circumstances disclosed by the evidence detailed upon this motion, we feel constrained to say, that the attempt of these ladies to pass over this causeway, and especially over the western part of it, was an act of rashness, which, upon the well settled principles of law applicable in cases of this character, bars all claims in their behalf for damages from the town. We think no person of ordinary discretion in their circumstances, and exercising ordinary prudence and discretion, would have made such attempt.

We are not unmindful of the fact urged upon our attention by the plaintiff's counsel, that these travelers were females. And in that fact, and in the timidity, inexperience, and want of skill which it implies, we can find an explanation of their injudicious and fatal attempt to turn around in the water, but no reason or excuse for the recklessness of their conduct in driving into it. It may be that in the midst of the appalling dangers which surrounded them, judicious conduct was not to be expected, and ought not to be required, but their error was in rushing into dangers which they had but too much reason to expect, and ought to have anticipated and avoided. The inquiry whether, in the particular case, the party conducted with ordinary care or prudence, always involves the consideration of the difficulties and obstacles to be overcome, the party's knowledge of their existence, and his means and power to overcome them. And if men of ordinary prudence and discretion would regard the ability of the party inade-

quate for the purpose, without hazard or danger, the risk should not be assumed. *Hyde, Adm'r.* v. *Jamaica*, 27 Verm., 464. "If," says Ch. J. Parker, in *Thompson* v. *Bridgewater*, 7 Pick., 190, "from foolhardiness one should plunge his horse into water, which by a flood had covered a causeway, he knowing it to be so, or if he should enter upon a bridge which he saw was weakened by a storm, he ought not to be indemnified for his carelessness." The same principle is enunciated by Lord Ellenborough, in the oft-cited case of *Butterfield* v. *Forrester*, 11 East, 61. "A party is not to cast himself upon an obstruction which has been made by the fault of another, if he do not himself use common and ordinary caution to be in the right." See also *Griffin* v. *Mayor &c. of New York*, 5 Selden, 461.

In order to entitle the plaintiff to a verdict, he was bound to show, affirmatively, not only the culpable negligence of the town, but also that the decedent herself conducted with ordinary prudence and discretion. *Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566. *Park* v. *O'Brien*, 23 id., 339. *Neal* v. *Gillett*, id., 437. *Daley* v. *Norwich and Worcester R. R. Co.*, 26 id., 591. In the language of Mr. Justice Gridley, in *Spencer* v. *Utica and Schenectady R. R. Co.*, 5 Barb., 337, "this is a stern unbending rule which has been settled by a long series of adjudged cases;" and this rule we must consider as the settled law of the state.

The application of this settled rule of law we suppose the jury, from inadvertence, or some other cause, must have failed to make, and finding the negligence of the town, must have decided to charge it with all the consequences of the accident, regardless of the co-operating carelessness of the decedent; which, in our judgment, was distinctly shown by the evidence, and completely established the defense.

We think a new trial should be granted.

In this opinion the other judges concurred.

New trial granted.