## ELIZABETH BRONSON *vs.* THE TOWN OF SOUTHBURY.

The plaintiff sent her son, between eleven and twelve years old, with a horse and wagon, on business, a distance of six miles, the road crossing a narrow but rapid stream which was subject to sudden overflows in heavy rains. The boy was a good driver and acquainted with the road. A sudden freshet in the river had raised the water so that it flowed over the bridge, and for a little distance over the approaches to it, to the depth of about a foot. The bridge was low, and both the bridge and the approaches to it were without a railing, and the road near the bridge was narrow and difficult to turn in. In attempting to cross, the boy in some manner got into the river with the horse and wagon, and both the boy and the horse were drowned and the wagon broken. In a suit against the town to which the bridge belonged for the damage to the horse and wagon, it was held—1. That the town was guilty of gross negligence in leaving the bridge and the approaches to it unprotected by a railing. 2. That the plaintiff was not guilty of want of ordinary care in sending such a boy in charge of the horse and wagon upon such a road. 3. That it was enough if the boy exercised reasonable care according to his age and capacity, although he might not have exercised the judgment of a person of mature age.
Held also that the defendants were not excused from keeping the bridge in proper condition as to height and railing, by reason of the fact that if higher and with a railing it would be in greater danger of being swept away by the ice in spring freshets.

ACTION on the statute concerning highways and bridges, to recover damages for the loss of the plaintiff's horse and in-

jury to her wagon, by reason of the negligence of the defend-
ants in not maintaining a railing upon a bridge and the high-
way adjacent to it, which were a part of a public highway of
the town. The case is sufficiently stated in the opinion. The
jury returned a verdict for the plaintiff, and the defendants
moved for a new trial on the ground that the verdict was
against the evidence.

*G. C. Woodruff* and *H. B. Munson*, in support of the
motion.

*Graves* and *E. W. Seymour*, with whom was *McMahon*,
contra.

FOSTER, J. On the 14th of May, 1867, the plaintiff, who
resides in Bridgewater, left her home accompanied by her
son with a horse and wagon, and drove to Roxbury. Here
she stopped at the house of an acquaintance, and sent her son
with the horse and wagon to Southbury to carry some clothes
to another son of hers residing in that town. To accomplish
that object it became necessary to cross the Pomperaug river,
a rapid stream, peculiarly subject to freshets, very much and
very quickly affected by a fall of rain. In crossing or in at-
tempting to cross a bridge over this river, this son of the
plaintiff was drowned, the horse was drowned, and the wagon
was broken. This suit is brought to recover the damages sus-
tained by the loss of the horse and wagon, it being claimed
by the plaintiff that her loss was chargeable to defects in the
bridge and in the approaches to it, which it was by law the
duty of the town to build and maintain in fit and proper con-
dition. The first count in the declaration charges the loss to
defects in the bridge, the absence of railing, &c. ; and the
second count to the defective condition and the insufficiency
of the highway near the bridge and river.

In the court below the jury rendered a verdict for the
plaintiff, and the motion for a new trial was based on the
misdirection of the judge, and for a verdict against evidence.
The former claim is now abandoned, and a new trial is sought
only for the reason that the verdict is against the evidence.

The principles of law which are applicable to, and which control this class of cases, have been so frequently and so recently considered by this court that it is quite unnecessary to discuss or even to repeat and reaffirm them. It becomes our duty to examine the evidence detailed in the motion, in order to determine whether, in view of legal rules and principles now well established, this verdict should stand or be set aside and a new trial ordered.

The width of the river a little above the bridge in question is about five rods ; a little below, it is a trifle wider. The space between the abutments on which the bridge rests is about twenty-four feet—the length of the bridge ; its width about twelve feet. It is a low bridge, not much raised above the water at its ordinary stage, and in time of freshets the water flows entirely over it, and over the highway on each of the approaches to it. On the day in question the water was highest about noon, when it was about a foot deep on the bridge. At two o'clock in the afternoon it had fallen a trifle, and then set back, according to the testimony of those on the ground, about a rod on the South Britain side of the river. According to the measurements and levels taken by the defendant's engineer sometime after the accident, it does not appear how long after, if the water was a foot deep on the bridge, much more of the highway would be submerged than is described by the witnesses as being in that condition. There was no railing on either side of the bridge, nor on any portion of the highway on either side of the river leading to it. The bridge was not at right angles with the river, and there was a curve in the road at each end of the bridge. On the South Britain side, for some ten or twelve feet before reaching the abutment, there was a cut in the road which made it so narrow that it was difficult, if not impossible, to turn a wagon round in it.

In this state of facts we feel bound to say that here was gross and culpable negligence on the part of the town whose duty it was to maintain this highway and bridge. Life and property were both put in peril by an attempt to pass this place at a high stage of water in the river. We cannot recog-

nize the claim made in behalf of the defendants, that this bridge, if built higher, and provided with a railing, would certainly be destroyed or carried away by ice, &c., in the time of spring freshets, and therefore it was proper to leave it as it was, and as it had been for years. We believe it is feasible, without great expense, to erect a proper structure there, with proper guards and protections, which would be reasonably permanent. But should it prove otherwise, should parts or the whole of the work be carried away, and that frequently, while the law remains as it is we think the town is bound to restore it as often as it becomes necessary. Obligation to the traveling public, the protection of life and property, imperatively demand it. But while we thus entertain no doubt of the negligence, we might say of the criminal negligence, of the town in the matter of this bridge and highway, there is another question of importance involved in the case not wholly free from doubt and difficulty: has the plaintiff shown that she conducted with ordinary care and prudence, and that her own negligence did not contribute towards the injury of which she complains?

Her son Charles, with whom she entrusted the horse and wagon to take a parcel to his brother in Southbury, while she stopped in Roxbury, was a lad a little less than twelve years of age; the horse was a quiet and gentle one; it was a little over six miles to the bridge; he had been over the same ground some five or six weeks before; he was a stout boy, large of his age and a good driver; had driven this horse almost daily for two years; could harness and unharness him, and never had any trouble with him. We are not prepared to say that this plaintiff, the mother of this boy, showed any want of ordinary care and prudence in sending him under the circumstances we have detailed on this errand. We think he was competent to perform the service required of him, and that the plaintiff in this regard exercised ordinary discretion. The lad started about eleven o'clock in the forenoon, and though there is some testimony that he whipped the horse and was driving rapidly a portion of the way, yet as he did not reach the river till afternoon, the distance being

but little over six miles, he probably drove at a reasonable rate. No one saw him as he attempted to cross the river, and exactly how the accident occurred is therefore unknown. The cushion of the wagon was found below the bridge between twelve and one o'clock, and parts of the wagon came over the dam below between one and two o'clock. About two o'clock several persons came to the bridge to make a search on account of the accident. The water then set back about fifteen feet across the road on the South Britain side of the river, and in the judgment of some of the witnesses was about eight inches deep on the bridge. Others thought it deeper. They traced the marks of the wagon into the water some ten, twelve, or thirteen feet from the bridge on the South Britain side, and that is all the evidence there is as to where or how the accident occurred.

The defendants insist that, from the levels taken by their engineer, the water must have set back much farther than fifteen feet across the highway on the South Britain side of the river, and that there was much deep water to be passed through before getting within fifteen feet of the bridge, and that no one exercising ordinary prudence would have continued driving towards the bridge through such a depth of water; and the case of *Fox* v. *Glastenbury*, 29 Conn., 204, is pressed upon us as an authority decisive against the plaintiff's right to recover.

Whether the jury considered that great changes might and probably did occur in this highway from heavy rains and freshets, happening after this accident, and before these levels were taken, or whether they chose to rely on the positive testimony of witnesses as to the extent of water over the highway, it is not our province to determine. If there was no water to obstruct the travel, till one arrived within fifteen feet of the bridge, there would be no want of ordinary care in driving to that point. When there, (and to this point, and beyond, this young lad was apparently traced by the marks of the wagon,) he must either have attempted to turn round, which was so difficult from the narrowness of the way that he failed to accomplish it and was swept off by the current,

or he kept on and reached the bridge, or a point near the bridge, and there, for want of a sufficient railing, met the like melancholy. fate.

The facts in the case of *Fox* v. *Glastenbury*, which. was well considered, and with the principles of which we are entirely satisfied, differ essentially from the case at bar. There, the persons who drove across the causeway lived in the neighborhood and were well acquainted with the way. This boy had never been here but once before, and lived at a distance. Knowing of the difficulty in the crossing at Glastenbury, the parties stopped and asked advice as to proceeding. They were told it would be dangerous unless they had a very gentle horse. This lad suspected no danger, no friendly voice gave him warning; and though one of the selectmen of the town lived on the road near the bridge, no obstruction was placed across the road to stop travelers. The parties at Glastenbury reached the bridge near the center of the causeway in safety; and here they could . have safely stopped until assistance, which was within call, came if any was needed to enable them to go back, the residue of the causeway being so entirely submerged that the line of the road was not visible. Still they went on, and as the danger increased and their horse stopped, instead of allowing him to do so and calling for help, which was still near at hand, they urged him on, and the result was the accident. For this unfortunate lad there was no safe stopping place when once in the danger, no ear to hear his cry for help, no opportunity from the character of the road to turn round and go back. That he exercised all the discretion and judgment of an adult is not to be presumed; his age forbids it. But we have already said that we find no want of ordinary care and prudence on the part of the plaintiff in sending him to perform this service, for we deem him competent for its performance.

Our conclusion therefore is, that as these defendants have been negligent in the discharge of a duty imposed on them by law, in consequence of which an injury has resulted to this plaintiff, there being no want of ordinary care on her part, no imprudence which has contributed to the injury, she

is entitled to the verdict rendered in her favor, and a new trial is denied.

In this opinion the other judges concurred, except SEY-MOUR, J., who having been counsel in the case when at the bar, did not sit.