HENRY HARRIS v. THE TOWNSHIP OF CLINTON.

*Negligence—Injury from defective highway—Contributory negligence —Submission to jury—Action of person in emergency—Illness in family—Evidence—Liability of township.*

1. A highway, in approaching a river, was constructed upon an embankment of varying width and height, and not upon a straight line, and at one point had been partially washed away, the river at some seasons of the year overflowing the road-bed. There was no railing or other protection to prevent travelers going off the embankment, or to indicate where the road-bed was when so submerged. A citizen, who was familiar with the general condition and character of the road, passed over it in the day-time without difficulty, though covered with several inches of water, and on his return in the evening found that the water had risen considerably, but, it not being yet dark, attempted to drive over it. On reaching the point where the embankment had been encroached upon by the river, his horse became unmanageable, plunged off the embankment, and was drowned, and in a suit against the proper township for damages the court directed a verdict in its favor, on the ground of plaintiff's contributory negligence.

   *Held*, that upon *this* issue there were two reasonable but different views which might be taken, and therefore the question should have been submitted to the jury.

2. It is not a universal rule that a defendant is excused from lia-

bility merely because the plaintiff, with knowledge of the danger caused by defendant's negligence, voluntarily incurs it. If the defendant has so acted as to induce the plaintiff, acting with *reasonable* prudence, to incur such danger, or if, by such negligence, plaintiff is placed in a situation of peril, to escape which he voluntarily incurs *another* danger, the defendant is liable, although the plaintiff may not in the emergency have pursued the course which ordinary prudence would have dictated.

3. "A person who, in the lawful use of a highway, meets with an obstacle or other cause of insufficiency, may yet proceed if it is consistent with *reasonable* care so to do; and this is generally a question for the jury, depending upon the nature of the obstruction or insufficiency, and all the circumstances surrounding the case." *Kelley v. Fond du Lac*, 31 Wis. 179, 187.

4. There was no error in excluding evidence of the ill health of plaintiff's wife, and his anxiety to reach home. Such fact could not be considered as an element of proof to excuse him from incurring risks which he might not otherwise have taken, or in measuring the care which a prudent man would have exercised under the circumstances.

5. Emergencies may sometimes be given in evidence, and will justify what otherwise would be considered a rash and indefensible act; such as of an engineer standing at his post in the endeavor to save the lives of the passengers or others when a collision is imminent, of a person rushing in front of an engine to save the life of a child, or placing himself in a position of danger to save the life of another. *Eckert v. Long Island R. R. Co.*, 43 N. Y. 502; *Linnehan v. Sampson*, 126 Mass. 506; *Cottrill v. Chicago, etc., Ry. Co.*, 47 Wis. 634; *Pennsylvania Co. v. Roney*, 89 Ind. 453.

6. The testimony offered tending to show the condition and situation of the highway, and whether there were any railings or guides to indicate the position of the embankment when covered by water, and to protect persons from the danger of driving off, was admissible, as bearing upon defendant's negligence in not keeping the highway in a condition reasonably safe and fit for public travel. *Carver v. Detroit & Saline Plank Road Co.*, 61 Mich. 584.

7. In a suit involving the negligence of a township in not keeping a highway in repair, a witness was asked whether, from his knowledge of roads, and the observation of the one in question, it was a *safe* road.

*Held*, that the jury were the proper persons to draw all proper inferences from the facts proved, and determine therefrom

whether the road was reasonably safe or not, and expert testimony was not required for that purpose.[1]

8. A township in Michigan is not obliged to keep its highways *absolutely* safe for public travel. The statute only requires that it shall keep them *reasonably* safe and fit for that purpose.

Error to Macomb. (Stevens, J.) Argued January 6, 1887. Decided January 20, 1887.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Franklin P. Monfort* (*T. M. Crocker*, of counsel), for appellant.

*Eldredge & Spier*, for defendant.

[The opinion so fully discusses the questions of law involved, with citations of authorities, that a summary of the briefs of counsel is omitted.—REPORTER.]

CHAMPLIN, J. The plaintiff is the proprietor of a livery stable in the village of Utica. On the morning of May 7, 1885, he let a horse and buggy to Andrew T. Sopher to make a trip to Mt. Clemens. The road from Utica to Mt. Clemens crosses the north branch of the Clinton river by a bridge. The approach to this bridge from the west was over low land, and the highway passed over an embankment for a distance of about 480 feet. The height of this embankment varied from 4 to 17 feet on the north side. The width of the roadway at this point varied from 14 to 18 feet. The road-bed had been constructed along the line of what had been a milldam, and was not upon a straight line. In passing west the first object crossed would be the bridge over the north branch of the Clinton river, which, on the day referred to, was above water. Proceeding westward, the embankment turned nearly

---

[1] See *Smith v. Sherwood Township*, 62 Mich. 160 (head-note 4); *Laughlin v. Street Railway Co.*, Id. 221 (head-notes 3, 4).

to the north-west, to a point marked by a thorn tree, which stood in the south edge of the embankment, a distance of 202 feet from the bridge. Opposite this tree, for a short distance, the land upon the embankment on the north side appeared to be about seven inches above water. At this point the embankment curves to the left, and proceeds in a nearly south-west direction for a distance of 120 feet, when it curves again, and travels in a north-westerly direction to high land, a distance of 185 feet. Opposite the last-mentioned curve, the middle branch of the Clinton river had encroached upon the embankment, and washed away a portion, narrowing the surface at this point to 14 feet. This embankment had for many years been subject to overflow from the waters of Clinton river, on occasions of freshets caused by rain-fall, and on the day above mentioned was submerged, with the exception of the point opposite the thorn tree, to the depth of from two feet to two and one-half feet. There was no railing or other protection to prevent persons traveling the highway from going off the embankment, or to indicate where the road-bed was when covered by water.

Mr. Sopher was familiar with the road, and knew its general condition and character. He went over the place in question on his way to Mt. Clemens, and found it covered with several inches of water, but had no trouble in making the crossing. This was about midday. At about six in the afternoon he started to return home. He reached the river before dark, and saw that the water had risen considerably during the afternoon. He attempted to drive across, and had proceeded to the point where the middle branch had previously washed away a part of the embankment, when, as he testifies, his horse and wagon went off the embankment on the right-hand side. He sprang out of the wagon upon grade. His horse turned short to the left, and came upon the embankment. He tried to turn him to the right, but he acted as if crazed, and plunged straight across the embank-

ment into the deep waters which overspread the flats, and was drowned.    The cushions and whip were lost, and the wagon was somewhat injured.

Plaintiff brought this action to recover damages for the loss of the horse, and injury to his wagon, and bases his right to recover upon the alleged negligence of defendant in suffering the embankment and approach to the bridge to be kept and maintained in a crooked, narrow, winding, washed, tortuous, uncertain, and overflowed condition, misleading and deceiving persons traveling the same, and in wrongfully and negligently failing to erect any railing and guide or barrier along such embankment and approach to the bridge, to prevent persons from driving into danger and deep water on either side of the same, and wrongfully and negligently failing to place any barrier or warning to prevent persons from driving upon and along said highway embankment while said crooked approach to the bridge was washed and overflowed with water and deceiving and misleading to travelers, and wrongfully and negligently suffering such defective highway, so overflowed, to remain open to travelers.    The declaration also alleged that Sopher was ignorant of the unsafe and perilous condition of such highway embankment and approach to such bridge, and, being misled and deceived by the narrowness, crookedness, windingness, and uncertainty of said highway embankment, and not being in any manner warned thereof, or prevented, upon such highway embankment, and without fault on his part, drove upon said bridge and embankment.

After the testimony was closed, the circuit judge took the case from the jury, and directed a verdict for the defendant, upon the ground that Sopher, who was plaintiff's bailee of the property at the time, was guilty of contributory negligence.    He instructed the jury as follows:

"If a person, with full knowledge that a highway is unsafe at a particular place, undertakes to pass such dangerous

point, he should be held to have done so at his own risk; and if, in this case, Sopher knew that the road was overflowed; that the embankment was narrow and winding; that there were no guard-rails, barriers, or monuments to indicate where the road was; that where it was so overflowed it was dangerous to cross; and, possessing such knowledge, he undertook to pass such dangerous point,—he should be held to have done so at his own risk.

"It appears from his evidence that he was familiar with this road, and had traveled it frequently for many years. He knew that it was winding, and states that he had heard that others had got into difficulty in undertaking to cross when it was overflowed, and what course he thought he ought to follow in order to avoid an accident; but that he made a mistake by being misled by a little spot of land that was not overflowed, and went farther to the right than he should have done, and the horse got off into deep water. He had crossed the embankment that same afternoon, relying upon his familiarity with it, and it was then overflowed with water. When he returned, he saw that the water was higher, and knew that the risk was greater, but he preferred to take his chances of navigating safely across, rather than seek some other route, or wait a few hours until the water had subsided."

We do not think that the facts disclosed by the record showed clearly and indisputably that the plaintiff's bailee was guilty of contributory negligence. Upon this issue there are two reasonable but different views which might be taken, and therefore the question should have been submitted to the jury. The fact that Sopher knew the location of the highway, that it was crooked, that there were no guides or barriers, that it was overflowed, and the water had raised since he last passed over it, and knew that some hazard was incurred in attempting to pass over it, did not conclusively show that it was negligence in him to make the attempt. Of course, the increased hazard from the rising of the water called upon Sopher to exercise increased caution, and may have been a circumstance which, in the opinion of some persons, should have determined him not to make the attempt at all; but

whether it was or not, in connection with the other facts, should have been left with the jury to determine.

It is not a universal rule that the defendant is excused from liability merely because the plaintiff, knowing of the danger caused by defendant's negligence, voluntarily incurs that danger. If the defendant has so acted as to induce the plaintiff, acting with reasonable prudence, to incur the danger, or if plaintiff, by defendant's negligence, is placed in a situation of peril, to escape which he voluntarily incurs another danger, the defendant is liable, although the plaintiff may not in the emergency have pursued the course which ordinary prudence would have dictated.

The danger in this instance consisted in the liability of driving off the embankment because it was more or less obscured by the water flowing over it. If Sopher negligently incurred this danger, that is to say, if he was not acting as a reasonable man would act under the circumstances, the plaintiff cannot recover. It should be remembered that the risk of driving off the embankment when obscured by the overflow of water was no greater than the risk of driving off on a dark night. In one case the vision is obscured by water, and in the other by darkness; and it would hardly be claimed that it would be negligence *per se* to attempt to drive over this portion of the highway on a dark night. Whether it would be negligence in a particular instance would depend upon all the facts and circumstances, which should be submitted to the jury.

We have examined the authorities cited by the defendant's counsel. The case mainly relied upon is *Fox v. Glastenbury*, 29 Conn. 204, which, in some of its features, is quite parallel to the one at bar. An inlet from the Connecticut river ran up into the main land. About 27 rods from its mouth, a highway had been laid out, across this inlet, to a ferry, and a causeway constructed across for the accommodation of the public. The causeway was about 25 rods long, and 19 feet

wide, and was raised about two feet above the ordinary stage
of water. There was a bridge about nine rods from the
easterly end of it. The water alongside of the causeway was
ordinarily about one foot deep, but in times of freshet fre-
quently rose so high as to submerge the causeway, and render
its passage perilous, and sometimes' impossible. About two
rods west of the bridge there was a curve in the direction of
the causeway, of about 63 degrees. There was a freshet in
the river at the time of the accident, which entirely covered
the causeway. The water was rising rapidly, and there was a
strong wind. The bridge was not submerged.

About 3 o'clock in the afternoon, Harriet Fox and Mrs.
Clarinda Fox, who were both well acquainted with the high-
way, procured a horse and wagon, and started to go over the
causeway to the ferry. When they came in full view of it,
they stopped in front of the residence of Mrs. French, and
inquired of her whether people had crossed there that day,
to which she replied they had, but that she had seen no one
pass that way that afternoon, and that she had not noticed
before that the water was over the road. The deceased
(Harriet Fox) then inquired of Mrs. French if she would
dare to cross. She replied that she would be afraid unless
she had a very gentle horse, and the deceased remarked that
their horse was perfectly gentle. They made the attempt,
which resulted in their getting off the causeway, and the
death of Harriet Fox.

Action was brought against the town to recover damages
for the loss of her life by reason of its negligence in not main-
taining a railing along the sides of the causeway. The court,
in deciding the case, used this language: .

" We think that in driving upon the causeway at all, even
easterly of the bridge, submerged, as they saw it was, and
with nothing visible above the surface of the water to indi-
cate its true location, these ladies disregarded the dictates of
ordinary prudence and discretion."

And again:

"The attempt of these ladies to pass over this causeway, and especially over the western part of it, was an act of rashness, which, upon the well-settled principles of law applicable in cases of this character, bars all claims in their behalf for damages from the town. We think no person of ordinary prudence and discretion would make such attempt."

We are not disposed to follow the court in this case in pronouncing the conduct of the deceased negligence *per se*.

The correct principle in cases of this kind is laid down in *Kelley v. Fond du Lac*, 31 Wis. 179, 187, as follows:

"The fact that a traveler sees an obstruction or other defect, and knows its dangerous character, is not conclusive proof that he was negligent in attempting to pass it. A person who, in the lawful use of a highway, meets with an obstacle or other cause of insufficiency, may yet proceed if it is consistent with reasonable care so to do; and this is generally a question for the jury, depending upon the nature of the obstruction or insufficiency, and all the circumstances surrounding the party."

The principle here stated was recognized in *Bronson v. Southbury*, 37 Conn. 199. See, also, *Mahoney v. Metropolitan R. R. Co.*, 104 Mass. 73; *Thomas v. Western Union Tel. Co.*, 100 Id. 157; *Horton v. Ipswich*, 12 Cush. 488; *Hubbard v. Concord*, 35 N. H. 52.

If the danger is known, and can be easily avoided, a peril voluntarily and unnecessarily assumed may constitute such contributory negligence as would preclude a recovery. *Erie v. Magill*, 101 Penn. St. 616; *Schaefler v. Sandusky*, 33 Ohio St. 246; *Wilson v. Charlestown*, 8 Allen, 137; *Centralia v. Krouse*, 64 Ill. 19; *Parkhill v. Brighton*, 61 Iowa, 103; *Cook v. Johnston*, 58 Mich. 437.

The cases cited above were mostly cases of defective sidewalks, where the danger could easily have been avoided, and no risk incurred. In the case before us the record does not disclose any other way which the plaintiff's bailee could

have taken to avoid the danger of crossing upon the embankment.

It was urged, if Sopher was guilty of negligence which would preclude him from recovering damages against the township, his negligence could not be imputed to the plaintiff, so as to bar his right of recovery, if he was damaged through defendant's negligence. The point is not raised by any assignment of error, and is inconsistent with the case made by the plaintiff's declaration, and calls for no decision upon this record.

There was no error in excluding testimony to prove that Sopher's wife was in ill health, and his anxiety to reach home. It could not be considered as an element of proof to excuse him from incurring risks which he might not otherwise have taken, or measuring the care which a prudent man would have exercised under the circumstances.

Emergencies may sometimes be given in evidence, and will justify what otherwise would be considered a rash and indefensible act; such as those of an engineer of a train of cars standing at his post in the endeavor to save the lives of the passengers or others when a collision is imminent, of a person rushing in front of an engine to save the life of a child, of a person placing himself in a position of danger to save the life of another. *Eckert v. Long Island R. R. Co.*, 43 N. Y. 502; *Linnehan v. Sampson*, 126 Mass. 506; *Cottrill v. Chicago, etc., Ry. Co.*, 47 Wis. 634; *Pennsylvania Co. v. Roney*, 89 Ind. 453.

But mere illness in a family which does not hinder a person from the prosecution of his ordinary business, or prevent him from leaving home to perform the ordinary duties of a constable, as was this case, cannot be considered as a circumstance attending the transaction which the jury would be authorized to consider in determining whether he acted as a prudent man would in attempting to cross, or in crossing, the stream in question. *Hyde v. Jamaica*, 27 Vt. 443, 464.

The court also erred in excluding testimony covered by the second, third, fourth, and fifth assignments of error. The testimony offered tended to show the condition and situation of the highway, and whether there were any railings or guides to indicate the position of the highway embankment when covered by water, and to protect persons from the danger of driving off. This was proper testimony as bearing upon the negligence of the defendant in not keeping the highway in a condition reasonably safe and fit for the public travel. *Carver v. Detroit & Saline Plank Road Co.*, 61 Mich. 584.

The tenth assignment of error is overruled. The question was:

"State whether or not, from your knowledge of roads, and observation of this, it is or not a safe road."

The jury were the proper persons to draw all proper inferences from the facts proved, and from such facts, and inferences therefrom, it was their province to determine whether the road was reasonably safe or not. It did not require expert testimony to show the condition of the road, and, if it did, the witness was not shown to have been an expert. *Ryerson v. Abington*, 102 Mass. 531; *Kelley v. Fond du Lac*, 31 Wis. 179, 186.

But the question was improper for another reason. The township is not obliged to keep its highways absolutely safe for travel. The statute only requires that it shall keep them *reasonably* safe and fit for public travel.[1] The question, therefore, if otherwise proper, was too broad, and not within the limitation of the statute.

The errors complained of in the charge and refusals to charge are covered by what we have already said.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.

---

[1] Act No. 264, Laws of 1887, § 3, amends How. Stat. § 1445, by *thus* qualifying the duty *seemingly* imposed by this section, which was broader than that recited in How. Stat. § 1442, giving a right of action, etc.