**ROVINSKI v. ROWE.**

No. 9152.

Circuit Court of Appeals, Sixth Circuit.

Nov. 30, 1942.

F. N. Trowbridge, of Green Bay, Wis., and Roberts P. Hudson, of Sault Ste. Marie, Mich. (North, Bie, Duquaine, Welsh & Trowbridge, of Green Bay, Wis., on the brief), for appellant.

I. G. Alk, of Green Bay, Wis. (George Barstow of Menominee, Mich., and Alk, Kresky, Cohen & Hughes, of Green Bay, Wis., on the brief), for appellee.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This case comes to us on appeal from a district court judgment on the verdict of a jury awarding damages against the individual appellant, Stanley J. Rovinski, in a personal injury action brought against him and Wilbur E. Lied and wife, who were exonerated by the jury.

Appellee, Robert S. Rowe, a resident of Wisconsin, brought his action in the Western District of Michigan and alleged in his complaint that the three defendants were residents and citizens of Michigan.

(1) Appellant attacked the service of process upon him as not in conformity with Civil Procedure Rule 4(d) (1), 28 U.S.C. A. following section 723c, which requires that service shall be made "upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

The return of the officer upon the summons certified service by leaving a copy of the summons and of the complaint at the dwelling house and usual place of abode and residence of appellant with his mother, Valerie H. Rovinski, 1308 Spies Avenue, City of Menominee, Michigan, "a person of suitable age and discretion then and there residing."

Appellee had instituted a prior action against appellant for damages on the same cause of action in the Circuit Court of Menominee County, Michigan. Appellant moved to dismiss that action upon the ground that he was a resident of Michigan, and therefore not amenable to service in the state court under the non-resident motorist statute of Michigan. In an affidavit in support of his motion to dismiss the state court action, appellant declared himself to be a resident of the City of Menominee, County of Menominee, and State of Michigan, where he was born and had resided continuously for 21 years. He made oath that, in 1918, he enlisted in the United States Navy and served therein for a year and a half; and, subsequently, was employed as a Steamboat Inspector for the United States Government. He swore positively that "he has at no time ever established any other residence than 1308 Spies Avenue, Menominee, Michigan; that he has established no household other than the aforementioned 1308 Spies Avenue, Menominee, Michigan."

In the instant action, appellant moved to dismiss upon the ground that no jurisdiction had been obtained over his person by the attempted service under Civil Procedure Rule 4(d) (1). His supporting affidavit set forth that, after his discharge from the United States Navy, he returned to Menominee, Michigan, where he resided until 1920, when he went to New York City and was occupied as marine engineer until 1934. He asseverated that, during such period, his dwelling and usual place of abode was at different places in the East and, for a time, on board ship. His affidavit asserted that, in 1936, he became an employee of the Department of Commerce, Bureau of Marine Inspection and Navigation, that his employment kept him away from Menominee, Michigan; and that his usual place of abode and dwelling place was in different places in the United States.

The affidavit stated further that, for the past two years, his usual place of abode and dwelling place had been continuously in Duluth, Minnesota; that his widowed mother resides in Menominee, Michigan, to which he has returned during the past twenty years "only to visit her"; and that he has considered his legal residence as Menominee, Michigan, but that his dwelling place and usual place of abode has been elsewhere.

The district judge entered an order denying appellant's motion to dismiss for want of jurisdiction over his person without prejudice to the production at the trial

of further testimony concerning his dwelling place or usual place of abode, and permitting a renewal of the motion to dismiss at the conclusion of the trial.

In his testimony at the trial, appellant admitted that he had always considered and held out No. 1308 Spies Avenue, Menominee, Michigan, as his home; that he paid for and had listed a telephone in his own name at that home; that he kept some clothing and odds and ends there; that there was always a bedroom ready for his occupancy when he returned home and that he invariably occupied it; and that he was unmarried and maintained no other household of his own. He conceded that he never voted elsewhere than in the State of Michigan.

Upon these facts, the district court held the service of process good; and, pointing to the distinctions in the authorities between the terms "place of abode" and "place of residence," said that, upon last anlaysis, the question of service must be resolved by "what best serves to give notice to a defendant that he is being served with process, considering the situation from a practical standpoint."

The district judge reasoned: "Taking all the circumstances in this case, I can see no surer way of a person knowing that he has been asked to come into court to answer to some complaint against him for damages than that notice should be left at a place which has been throughout his life the place of his legal residence, the place where his parents lived, where his mother lives now, the place called 'Home' and the one place to which he returns when he has the opportunity to do so, * * *." The court stressed the fact that the notice had been left with appellant's mother.

In construing Civil Procedure Rule 4(d) (1) liberally, the district court effectuated the declared purpose of the Supreme Court Advisory Committee in submitting a service of process rule, which would provide "a good deal of freedom and flexibility in service." [See statement of Dean (now Circuit Judge) Clark in Proceedings of the Institute on Federal Rules, Cleveland Session, July 1938, page 204.] That the rule should be liberally construed seems logical, when consideration is given to the fact that uncertainty of its applicability to varying situations would be increased by strict construction. This is apparent from the irreconcilable conflict among state courts upon the meaning and interpretation of the expression "usual place of abode." We have been cited no pertinent decision of the courts of Michigan; and it would seem profitless to lengthen this opinion by reviewing conflicting state court authorities.

The wide diversity of opinion may be illustrated by two examples. On the one hand, delivery of process to defendant's wife at an apartment in Miami Beach, Florida, where his family had been living for about two months and where he had previously visited them, but from which he had departed to his permanent home in another state, was held *sufficient* under a Florida statute, Comp.Gen.Laws 1927, § 4246, providing for service at the "usual place of abode" of the defendant. State ex rel. Merritt v. Heffernan, 142 Fla. 496, 195 So. 145, 127 A.L.R. 1263. On the other hand, delivery of service of process to the father of a minor defendant at the family home where the defendant had lived up to the time of his enlistment in the United States Army less than one month previously was held *insufficient* under a New Jersey statute, N.J.S.A. 2:26–43 et seq., 2:27–59 et seq., providing for service at the "usual place of abode" of the defendant. Eckman v. Grear, 187 A. 556, 14 N.J. Misc. 807.

The only pertinent reported Federal decision is Skidmore v. Green, D.C.N.Y., 33 F.Supp. 529, 530, wherein service was upheld under Rule 4(d) (1) against a peregrinating policeman, who, after retiring from the New York force, spent most of his time traveling about the country in an automobile and trailer. Process had been delivered at the home of defendant's brother which, in the application for his New York automobile license, defendant had given as his address. In his application for his South Carolina automobile license, he had stated that he was a resident of New York. The district judge commented that "so far as the migratory nature of his life" permitted of any place of abode or dwelling house, that place was his brother's home.

 In our judgment, Civil Procedure Rule 4(d) (1) should be construed liberally, to effectuate service where actual notice of suit has been received by the defendant. On the facts of this case, the district court properly held the service of process valid.

(2) Appellant insists that the district court erred in denying his motion for a di-

rected verdict, and in declining to set aside the verdict of the jury. His contention is that he violated no legal duty to appellee in the circumstances of the case; that appellant's negligence was not the proximate cause of appellee's injury; and that the appellee was guilty of such contributory negligence as to bar his recovery.

The record reveals that, at about six o'clock on the dark and foggy morning of November 15, 1939, Mrs. Mike Elias, a hospital nurse, was driving a 1935 model delivery truck in a northerly direction on a wet United States highway. At a point about fourteen miles north of Menominee, Michigan, appellant, proceeding in the same direction, drove a 1938 Dodge Coupe into collision with the rear portion of the Elias motor vehicle. After the collision, the nurse's automobile, with a broken gas tank and a useless rear light, was standing upon the right side of the highway. Appellant's automobile, after striking the Elias car, had been driven off to the right shoulder of the highway. Shortly after the accident, appellee, a twenty-three-year-old mechanic and truck driver in the employ of a Green Bay company which purchased wrecked automobiles, was driving slowly north on the highway to pick up a designated automobile. Seeing the two motionless motor vehicles in front of him, he pulled to the left of the highway and passed them; then swung his truck to the right and parked about one hundred feet ahead on the right shoulder of the road. After turning on the large red tail light of his truck, he walked back to the point of the collision, where he saw appellant and Mrs. Elias standing. He told them that the "vehicle on the road was very dangerous because of the weather, and that somebody was going to get hurt." Mrs. Elias asked him if he would pull her car into the next town. He replied that he could not, but would be glad to move her automobile off the road. He backed his truck to the front end of hers so that the center of his truck was in line with the center of her truck, and proceeded to hook the cars together by means of a chain. In doing so, he placed himself between the back of his truck and the front of the Elias truck. After he had hooked one loop around the shackle of the lady's automobile and was attempting to tie the chain, a fourth automobile, driven north by Mrs. Lied, crashed into the rear of the Elias car causing appellee to be crushed between his own truck and the front part of the Elias truck.

Appellant testified that he admitted to Mrs. Elias that he was "to blame" for the accident and that he considered it his duty to clear up the dangerous situation which he had created on the highway. He testified, further, that when the Lied car came along he was not standing back of the Elias automobile, but was holding an electric lantern to furnish light for appellee, so that the latter "could see better to fasten his chain or whatever he was doing there." Appellant admitted that the traffic situation was dangerous because of the dense fogginess at the particular place of the accident.

On these facts, the district judge denied the motion of appellant for a directed verdict and charged the jury with painstaking precision so as to instruct them comprehensively upon all principles of applicable law for their guidance in determining the issues of fact.

The district judge, in his model charge, instructed the jury in part, as follows:

"It is the claim of the defendant Rovinski that the plaintiff was guilty of contributory negligence in voluntarily going between his truck and the Elias car, and that he should not have placed himself in that position, or, having done so, that he should have maintained a careful lookout for the approach of other vehicles. It is the rule that where one voluntarily assumes a hazardous position, which proximately contributes to the injury he receives, he is guilty of contributory negligence, and cannot recover. It is for you to consider all of the facts and circumstances as you find them to be established by the evidence, and to determine therefrom whether or not the plaintiff, in placing himself between the truck and the stalled car, and in failing to take precautions so that he would become aware of the approach of other automobiles in time to avoid injury, was guilty of contributory negligence.

"You are instructed, however, that it is not necessarily contributory negligence, as a matter of law, to expose oneself to danger in a reasonable effort to save a third person from harm. The question is one for the determination of the jury, the ultimate test being whether in all the circumstances surrounding the situation, the acts or omissions of such a person were or were

not such as a reasonably prudent person would have indulged in at the time.

"Defendant Rovinski claims that even though he were to be found guilty of negligence in colliding with the Elias car, still the injuries to plaintiff are not the result of that negligence. In other words, that defendant Rovinski's negligence was not the proximate cause of plaintiff's injuries.

"You are instructed that in many cases, after an act of negligence has occurred, another force may intervene, and become the sole proximate cause of the accident, and in such an event, if you find such to be the fact in the present case, there could be no recovery against defendant Rovinski.

"On the other hand, it is the law that whoever does an unlawful act is answerable for all the consequences that may ensue in the ordinary course of events, even though such consequences are immediately and directly brought about by an intervening cause, if, in fact, such intervening cause was set in motion or made probable by the act of the original wrongdoer, and if the consequences are such as might with reasonable diligence have been foreseen. The test is whether or not there was an unbroken connection between the wrongful act and the injury. Did the facts constitute a succession of events so linked together as to make a natural whole, or was there some other new, independent cause intervening between the original wrong and the injury?

"You are instructed that the driver of an automobile which is negligently operated by him in such a manner as to place others in a position where they are struck and injured by an automobile operated by a third person, may be held liable therefor, where it is established that such negligence was the proximate cause of the resulting injuries. The fact that the driver of a third car was also negligent is not a defense, provided it is established by the evidence that both drivers were negligent, and that their concurrent negligence was the proximate cause of the resulting injury. It is, of course, essential to a recovery against the first wrongdoer that it be established by the evidence that there was a causal connection between his negligent conduct and the final resulting injury. The ultimate test is whether it appears from all the evidence that the negligence of the first wrongdoer was such that it can properly be said to have been the

proximate cause of the later injury; in other words, whether in all the circumstances surrounding the situation he ought reasonably to have foreseen that the later consequences might occur as the result of his negligent acts or omissions.

"In negligence cases the law recognizes that there may be more than one proximate cause of the same injury, and where a chain of events has once been started, due to the negligence of the driver of an automobile, he may be liable for all the mishaps which are in fact the proximate results of his unlawful conduct. The defendant Rovinski contends that the effect of any negligence on his part had ceased without any damage or injury, except some slight injury to the Elias truck; that the event which caused the injury to plaintiff was an independent event, entirely disconnected with the first accident, which he could neither have anticipated nor avoided.

"If you find that the injury was caused solely by the collision between the Lied car and the Elias truck, you are not permitted to speculate on what might have happened if the first car (Rovinski's) had not struck the Elias car, but you must determine from the evidence whether the two events were put into operation by the Rovinski car, and were not disconnected independent accidents which finally occurred. If you find that they were disconnected, independent accidents, you must find a verdict of 'no cause of action' as to defendant Rovinski.

"Now, to summarize briefly, if you find that the sole proximate cause of the accident was the negligence of the plaintiff in placing himself between the Ford wrecker and the stalled car of Mrs. Elias, and that he was therefore guilty of contributory negligence, or if you find that any act of negligence of any defendant was not the proximate cause of plaintiff's injuries, then your verdict must be for the defendants of 'no cause of action.' "

Consideration of the opinions of the Supreme Court of Michigan is convincing that the district judge properly denied the motion for a directed verdict, and charged the jury correctly under Michigan law.

In Luck v. Gregory, 257 Mich. 562, 241 N.W. 862, 864, 244 N.W. 155, relied upon by appellant, the majority of the court in a five to three decision held that there could be no recovery where the driver of

an automobile in which plaintiff was riding could plainly see a dangerous situation ahead and negligently drove on. The negligence of the defendant in placing himself in a dangerous position on the highway was regarded as "of no consequence unless such negligence was a proximate cause of the injury to plaintiff." The established doctrine of proximate cause was merely applied to facts readily differentiable from those found here. The same comment may be made upon two other cases cited by appellant: Dawson v. Postal Tel-Cable Co., 265 Mich. 139, 251 N.W. 352; Bliel v. Detroit St. Ry. Co., 98 Mich. 228, 57 N.W. 117.

Fugere v. Aronson, 285 Mich. 661, 281 N.W. 696, and Krouse v. Southern Michigan Ry. Co., 215 Mich. 139, 183 N.W. 768, among the citations of appellant, contribute no substantial support to his position; for, in both, judgments for defendants below were upheld on showings of contributory negligence not remotely comparable to the conduct of appellee in the case at bar.

Appellant places much dependence upon Cook v. Johnston, 58 Mich. 437, 25 N. W. 388, 389, 55 Am.Rep. 703, in which a wife, in endeavoring to rescue her husband's horse and buggy from a burning shed, was injured and obtained judgment in the trial court against their landlord. On appeal, it was held that the case should not have been submitted to the jury, and a new trial was ordered. Judge Campbell

remarked that it "would be going beyond all reason to hold a person liable for bodily injuries suffered by another in voluntarily and deliberately entering a burning wooden shed" under the circumstances. The jurist said further: "The act in which she was engaged may have been such as she may have thought proper and laudable and worth some risk, but defendant's responsibility cannot be created or increased by such independent and voluntary conduct of plaintiff in putting herself in harm's way."

That the applicability of the rescue doctrine to appropriate circumstances has not been foreclosed in Michigan, however, is evidenced by the expression of another distinguished Michigan jurist, Judge Champlin, in a later case, Harris v. Township of Clinton, 64 Mich. 447, 456, 31 N. W. 425, 429, 8 Am.St.Rep. 842: "Emergencies may sometimes be given in evidence, and will justify what otherwise would be considered a rash and indefensible act; such as those of an engineer of a train of cars standing at his post in the endeavor to save the lives of the passengers or others when a collision is imminent, of a person rushing in front of an engine to save the life of a child, of a person placing himself in a position of danger to save the life of another." [See footnote for brief discussion of the rescue doctrine as declared outside Michigan.][1] Cook v. Johnston, supra, was cited to the proposition that "if

---

[1] The language of Mr. Justice Cardozo in Wagner v. International Ry. Co., 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1, is eloquent: "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. * * * The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had." The great common-law jurist stated further that "there must be unbroken continuity between the commission of the wrong and the effort to avert its consequences"; but that continuity is not broken by the exercise of volition; and held that whether the plaintiff, in going to the rescue as

he did, was foolhardy or reasonable in the light of the emergency confronting him was a question for the jury.

In upholding a judgment for a plaintiff below, the Supreme Court of Minnesota, in Arnold v. Northern States Power Co., 209 Minn. 551, 297 N.W. 182, 186, said: "When one, because of negligence of another, is placed in imminent peril of life, a third person may seek to rescue such imperiled person and may recover for injuries received by him in the attempt in an action against the one whose negligence imperiled the life of such person in danger, unless 'it appear that the attempt to rescue was clearly one of rashness or recklessness under the circumstances presented. * * * Upon that question the law is neither harsh nor exacting. * * * Sentiments of humanity applaud the act, the law commends it, and, if not extremely rash and reckless, awards the rescuer redress for injuries received, without weighing with technical precision the rules of contribu-

the danger is known, and can be easily avoided, a peril voluntarily and unnecessarily assumed may constitute such contributory negligence as would preclude a recovery." In reversing a directed verdict for the defendant, upon the ground that the facts disclosed in the record were such from which two reasonable but different views might be taken, and that therefore, the issue of fact should have been submitted to the jury, the opinion in Harris v. Township of Clinton, supra, emphasized that "it is not a universal rule that the defendant is excused from liability merely because the plaintiff, knowing of the danger caused by defendant's negligence, voluntarily incurs that danger." It was made clear that if a defendant has so acted as to induce the plaintiff, acting with reasonable prudence, to incur a danger, the defendant is liable, although the plaintiff "may not in the emergency have pursued the course which ordinary prudence would have dictated."

■ In an opinion by Judge McAllister (now a member of this court), the Supreme Court of Michigan held in Bordner v. McKernan, 294 Mich. 411, 293 N.W. 889, that whether a passenger in a taxicab was guilty of contributory negligence in failing to leave the cab, which was left standing at night in the middle of a street after a collision with another automobile, was an issue properly submitted to the jury. In upholding the liability of two defendants, as fixed by the jury, it was held that two neg-

ligent acts may be cooperating and concurrent proximate causes. See to same effect, Wallace v. Kramer et al., 296 Mich. 680, 296 N.W. 838; Reed v. Ogden & Moffett, 252 Mich. 362, 233 N.W. 345; Camp v. Wilson, 258 Mich. 38, 241 N.W. 844.

In Deadman v. Detroit, Jackson & Chicago Ry., 223 Mich. 228, 193 N.W. 778, 779, the trial court was reversed for directing a verdict in an action for personal injuries, where the plaintiff railroad employee was attempting to save the property of his employer by clearing a track. It was held that he was not guilty of contributory negligence as a matter of law for failing "to look down the tracks during the minute he was at work in trying to remove the truck."

In Ebel v. Bruzewski, 296 Mich. 654, 296 N.W. 715, the holding was that the plaintiffs, who had been struck by defendant's automobile, were not guilty of contributory negligence as a matter of fact or of law in standing in the traveled portion of an icy street to the rear of their automobile, which protruded into the street after another accident, concerning which plaintiffs were being interrogated by police officers.

■ It is obvious that the ruling of the district court upon the motion for a directed verdict and the court's instructions to the jury were in conformity with Michigan law. Accordingly, the judgment below is affirmed.

---

tory negligence or assumption of risk.' See 20 R.C.L., p. 29, § 22, and cases cited."

See, also, Duff v. Bemidji Motor Service Co., 210 Minn. 456, 299 N.W. 196.

"It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the lands or chattels of himself or a third person from harm." Restatement of the Law on Torts, § 472. See, also, § 445. See Wolfinger v. Shaw, 138 Neb. 229, 292 N.W. 731, 732; Morrison v. Medaglia, 287 Mass. 46, 191 N.E. 133.

This court, when free to apply its independent reasoning, has recognized the validity of the rescue doctrine as upheld in the instant case. In New York Cent. R. Co. v. Brown, 6 Cir., 63 F.2d 657, 658, Judge Simons said: "But it has long been settled that the chain of causation

is not broken by an intervening act which is a normal reaction to the stimulus of a situation created by negligence, and such normal reaction has been held to include the instinct toward self-preservation, Stott v. Shepard, 2 W.Bl. 892 (the lighted squib case), and the equally natural impulse to rush to others' assistance in emergency, Wagner v. International Railway Co. (Cardozo, C. J.), 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1 (the danger invites rescue doctrine). This rule of causation has been repeatedly recognized by this court. Sandri v. Byram [6 Cir.], 30 F.2d 784, 786; Erie Railroad Co. v. Caldwell [6 Cir.], 264 F. 947."

For further discussion and citations of authorities, see 38 Am.Jur. 739; 45 C.J. 841; 64 A.L.R. 516; also, 19 A.L.R. 13.