RENTZ v. ANHUT.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

In determining whether trial court was in error in directing a
verdict for defendant, Supreme Court considers the testimony
most favorable to plaintiff.

2. AUTOMOBILES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—WEIGHT
OF EVIDENCE.

In action against motorist for death of pedestrian who was cross-
ing street 90 feet wide about 100 or 150 north of an intersec-
tion when hit by northbound automobile, question of whether
motorist was guilty of negligence and pedestrian free from
contributory negligence *held,* for jury where, in spite of fact
that testimony presented by eyewitnesses and others for de-
fendant would absolve him from negligence, testimony of wit-
nesses for plaintiff, although they were not eyewitnesses, raised
a question of fact as to whether or not defendant was negli-
gently operating his car on wrong side of street.

Appeal from Wayne; Campbell (Allan), J. Sub-
mitted April 19, 1938. (Docket No. 8, Calendar
No. 39,766.) Decided June 6, 1938.

Case by Anna Rentz, administratrix of the estate
of Leona Srednicki, deceased, against Andrew Anhut
for personal injuries sustained when struck by a
motor vehicle causing death of plaintiff's decedent.
Directed verdict and judgment for defendant. Plain-
tiff appeals. Reversed and new trial granted.

*Casper C. Cutler,* for plaintiff.

*Van H. Ring,* for defendant.

CHANDLER, J. On the evening of May 12, 1935, plaintiff's decedent was struck and fatally injured by defendant's car while crossing from the east to the west side of Livernois avenue in the city of Detroit at a point between 100 and 150 feet north of the intersection of Livernois avenue with Buchanan. This appeal presents the question as to whether the trial court was in error in directing a verdict for defendant. In so doing, he made this statement:

"The only eyewitnesses who have testified have been the two passengers in the car, the defendant and the young woman. They have given their version. There is no other version before us. That version excuses the defendant from liability. There is testimony as to the presence of the girl on the yellow line in the middle of the street, some seconds before the accident, but no eyewitness saw her at the immediate time of the accident. Therefore, there is nothing to show that Mr. Anhut could have done anything that he did not do to have avoided hitting her under the circumstances of the case."

In disposing of the issue we must consider the testimony most favorable to plaintiff.

Livernois avenue at the place of the accident is 90 feet in width and the northbound traffic is separated from that which is southbound by the familiar yellow line in the center of the street. Defendant was proceeding north on Livernois and it is his claim, and that of the other occupant of his automobile, that without warning the deceased suddenly appeared directly in front of the car and that it was impossible to avoid striking her; that at that time the car was traveling at a speed of 25 to 28 miles per hour and was at all times to the east of the yellow traffic line, there being at the moment of collision another car driving parallel with defendant which was also east of the line.

The balance of defendant's testimony and that of his companion, standing alone, would absolve defendant of guilt of negligence.

However, plaintiff produced testimony which, if believed by the jury, could have established that deceased was standing on the yellow line waiting for traffic to pass and that she was struck by defendant's car while it was being driven at a rapid speed on the wrong side of the street to the west of the yellow line, contrary to the claims of defendant.

A witness for plaintiff, who was riding north in an automobile on Livernois, testified: ·

"*Q.* And did you see the girl before she was struck?

"*A.* Yes. * * *

"*Q.* And where was she when you first saw her?

"*A.* Well, about 100 or 150 feet from Buchanan.

"*Q.* Was she on the west side or the east side of the street?

"*A.* She was on the east side, crossing over to the west. * * *

"*Q.* Now, when you first saw her, was she on the street, on the pavement or on the curb?

"*A.* She was on the curb.

"*Q.* Did she cross in front of you, or did you pass in front of her?

"*A.* She crossed in front of us.

"*Q.* Was there anybody with her?

"*A.* No.

"*Q.* Now, when she crossed in front of you, where would you say, or how far away would you say that your automobile was from her?

"*A.* About 100 or 150 feet away from her.

"*Q.* As you passed her, was her back to you, or face toward you?

"*A.* Her back.

"*Q.* Was she walking or standing still?

"*A.* She was standing on the yellow line when we passed her.

"*Q.* Could you see her, or did you see her, as you drove along, as she walked from the curb to the center of the street?

"*A.* Yes, we saw her.

"*Q.* Did you actually see her while she remained standing in the street?

"*A.* When we passed her, she was standing."

The witness then testified that immediately after she had passed deceased she heard the sound of the impact.

Witness Geisler, who estimated the speed of defendant's car at 40 miles per hour, testified as follows:

"I had come to a stop facing north on Livernois in about the center of the street, preparatory to making a left turn on to Morse avenue. A car passed me on the left-hand side. The car was on the left side of the street. I'd also heard a crash. I looked through my rear vision mirror and saw a body just falling to the pavement. I saw the body just as it landed. I don't remember seeing any automobile close to it. I stopped to let this fellow pass me on the left, then ran over to the body. There was still life in it. Decedent had fallen to a point right on or just a few inches off either way, of the yellow line dividing the north and south bound traffic lanes on Livernois. There were no shoes or glasses on decedent. I found her shoes and glasses right on the yellow line about 50 feet from where she had fallen to the pavement. It wasn't very long after the accident that I saw defendant Anhut. He turned around and came back. That is when I saw him. When defendant came back to the scene of the accident, he was sort of smiling. The automobile driven by defendant which struck decedent had a dent in the hood and the right headlight. Defendant's car passed to the left of me as I was waiting just to the right of the yellow line to make my left turn."

A third witness for plaintiff stated:

"I was driving north on Livernois and just before I heard the crash, I saw the girl about 100 feet ahead of me, crossing the street. Neither Morse nor Morton run through Livernois. Later, I saw the girl in the center of the street, on the yellow line. This line runs parallel to the curbs, in the center of the street on Livernois. She was standing there and was not walking at the time. There were some cars behind me. There was nothing immediately to my left between me and the girl. There were automobiles going south on Livernois at the time. After I heard the crash, I looked to the left and saw decedent's body in the air. Defendant's automobile which was close to her was on the left side of the street. The front right headlight of that car was broken and there was a dent in the right side of the hood, and the water was leaking out of the radiator."

Although the witnesses produced by plaintiff were not eyewitnesses, we believe their testimony, as quoted, raised a question of fact for the consideration of the jury as to whether defendant was guilty of negligence and deceased free from contributory negligence. The jury, if it believed this testimony, might properly have inferred from the facts established that deceased, while standing in the middle of the street waiting for traffic to pass and in the exercise of due care, was fatally injured by defendant while negligently operating his car on the wrong side of the pavement. Defendant's motion for a directed verdict should not have been granted.

Reversed and remanded for a new trial, with costs to appellant.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred.