WHITE *v.* VANDEVELDE.

1. AUTOMOBILES—MOTORCYCLES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY—LEFT TURN.

In action by motorcyclist against car owner for injuries sustained in collision between their respective vehicles as latter's driver made a left turn off highway after having stopped on right side to allow other cars to pass and turned immediately in front of plaintiff who was then going 15 to 18 miles an hour in the same direction as defendant's car had been traveling and sounded his horn before attempt to pass, plaintiff's testimony *held,* sufficient to present question of driver's negligence and plaintiff's freedom from contributory negligence to jury.

2. SAME—SPEED—RESIDENTIAL DISTRICT—QUESTION FOR JURY.

Submission to jury of question of whether accident between motorcyclist and motorist occurred in residential district as defined by statute limiting lawful speed in such places to 20 miles per hour *held,* not error under record presented where testimony on such subject as introduced by plaintiff was meager and defendant failed to produce any and there was some evidence plaintiff was traveling faster than 20 miles an hour (1 Comp. Laws 1929, §§ 4693, 4697, as amended by Act No. 119, Pub. Acts 1933).

3. SAME—INSTRUCTIONS—STATUTES—LEFT TURNS—SIGNALS—PROXIMATE CAUSE.

In action by motorcyclist against car owner for injuries sustained in collision as latter's driver turned from direct line across highway in front of plaintiff who had approached from rear, reading of statute and instruction to jury that it might consider, in its determination of proximate cause, motorist's failure to give warning of intention to proceed in finishing partially completed left turn just as plaintiff was about to pass her car *held,* not error (1 Comp. Laws 1929, § 4711).

4. PLEADING—EVIDENCE—VARIANCE.
    In action arising out of collision which occurred as motorist made a turn from the direct line to cross left on highway just as plaintiff motorcyclist was about to overtake and pass her from the rear, fact that charge of negligence in plaintiff's declaration and theory of the manner in which the accident happened as alleged were not exactly substantiated by evidence in that declaration had defendant's car facing southerly while plaintiff's testimony indicated it was facing southeasterly when it had stopped to let other vehicles pass *held*, not to have misled defendant.

5. AUTOMOBILES—CREDIBILITY OF WITNESSES—WEIGHT OF EVIDENCE.
    Truthfulness of witnesses and weight to be given their testimony *held*, for jury in action by motorcyclist against car owner for injuries sustained, where testimony was conflicting.

Appeal from Delta; Bell (Frank A.), J. Submitted April 7, 1938. (Docket No. 47, Calendar No. 39,900.) Decided June 6, 1938.

Case by Vernon White against John Vandevelde, also known as John King, for damages for personal injuries sustained in a collision between a motorcycle and an automobile. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Glenn W. Jackson*, for plaintiff.

*G. R. Empson* (*Edward A. Smith* and *George Carr*, of counsel), for defendant.

POTTER, J. Plaintiff sued defendant to recover damages resulting from a collision between plaintiff's motorcycle and defendant's automobile. From a judgment for plaintiff, defendant appeals.

About 4:30 p. m., September 24, 1933, plaintiff was driving south through Kipling on US-2. The weather was clear and the pavement, 20 feet wide, was rough and dry. Plaintiff and defendant differ as to what happened.

Plaintiff claims he had just finished reconditioning the motorcycle engine and because of the roughness of the road was driving the vehicle south at 15 to 20 miles an hour; that north of Kipling a Chevrolet motor car passed him and he followed it in to Kipling; that he saw defendant's automobile on the righthand side of the highway 500 or 600 feet away, headed in the same direction he was traveling, moving when he first saw it but overtaken and passed by the Chevrolet motor car that passed him; that defendant's automobile came up to the center of the highway and stopped, facing southeast, when plaintiff was about 200 feet away. Plaintiff claims he blew his horn when he was 100 feet from defendant's automobile but the driver of defendant's automobile gave no signal to apprise him of what she proposed to do; that he pulled over to the left side of the highway because there was no room to pass on the right side, it being occupied by defendant's automobile, there being no shoulder to the highway but a ditch alongside; that he attempted to pass defendant's automobile as the Chevrolet automobile had, on the left side, believing the driver was waiting for him to pass; that he reduced his speed to between 15 and 18 miles an hour; that the driver of defendant's automobile, when plaintiff was 10 or 15 feet away, caused it to move forward in a series of jerks; that the front of defendant's automobile was up to the middle line of the pavement when it began to jerk forward. Plaintiff testified he tried to avoid collision by applying his brakes harder than before and threw the motorcycle over to the left toward the ditch, but it was too close to avoid collision; that the motorcycle struck the left front wheel and fender of defendant's automobile on the east edge of the pavement and plaintiff was thrown about 10 feet

ahead of defendant's car. and close to a woodpile. The record shows plaintiff's leg came in contact with defendant's automobile. He suffered a double compound comminuted fracture of the right leg between the knee and ankle, and other injuries. He was kept under opiates for six weeks due to pain and removed from the hospital at the end of three months to his home where he was under a doctor's care for two or three months. At the time of the trial his injured leg was crooked and was about 2½ inches shorter than the other. Plaintiff testified he was paying close attention and only one car passed him and was between him and defendant's automobile just before the accident; that the driver of defendant's automobile was endeavoring to turn into a private driveway a few feet south of the Cleveland Cliffs road.

The driver of defendant's automobile testified:

"As we approached Kipling I noticed there were quite a number of cars behind me. My sister lives right on the corner on the east side of the road that runs into the furnace. I was taking her home. I had to turn easterly to get across the highway. Before I stopped to make my turn I looked around. There was a number of cars coming. Before I got to make my turn there was some that went by, all but two, and as I made that turn there was one behind me and one ahead of me that I let go by. I stopped my car by the side of the road. After I started out I looked again. I did not see any car or motorcycle ahead of me or behind me. There was one car that was behind me that didn't pass. It was standing still. When I made the turn I made a sign signifying I was going to turn. I put out my hand and looked. After I put out my hand I seen it was clear and I started out. I did not see any automobile except the one that was standing

still, nor did I see a motorcycle in the road. When I made that turn I was going in an easterly direction, to my sister's house. My car did not stop in the middle of the road. I was going real slow. I had it in low.

"*Q.* When did you first see White and his motorcycle?

"*A.* When he came right on me.

"*Q.* What do you mean by 'come right on you'?

"*A.* When he hit me as I was making that turn.

"At the time the motorcycle hit me I was facing east toward my sister's house. The front wheels were practically off the paved portion of the road. There wasn't much left, just a little of the back wheels. I was almost off the road. * * *

"On the west side there was plenty of room for me to park while cars went by. There was no ditch.

"I have driven a car 10 or 12 years. I should judge he was coming fast. * * *

"I was turning into that furnace road. My sister did not have a private driveway into her road. That is the road where she lived. * * *

"There was a car that remained behind and did not pass before the accident. That car was not standing there as the accident occurred. It went by just as I made the turn. It went by in back of my car, just as I turned out into the road. I am sure of that."

Mrs. Cole, the driver of defendant's automobile, said she looked north and saw no motorcycle as she was crossing the road until about the time it struck her automobile, that there was nothing to obstruct her vision; she did not blow her horn, jerk the car, or put the brakes on that she knew of.

There were other witnesses who gave testimony supporting the claims of the respective parties.

Plaintiff in his declaration placed defendant's automobile facing "southerly" when it stopped on

the west side of the highway just before crossing, whereas, he testified on the trial it was headed "southeast."

At the close of plaintiff's case a motion was made for a directed verdict for defendant for the reason there was no evidence of any negligence on the part of the driver of defendant's automobile and the evidence showed plaintiff guilty of contributory negligence. This motion was denied.

After defendant's case was in and the jury returned its verdict, defendant moved for a new trial because the verdict was contrary to law and the great weight of the evidence; the court erred in denying defendant's motion at the close of plaintiff's case; the court erred in giving certain instructions to the jury and in not giving others; the court erred in submitting the question of whether the accident occurred in a residential district or not to the jury, instead of deciding it as a matter of law.

We think the testimony of plaintiff sufficient to carry the questions of defendant's negligence and plaintiff's freedom from contributory negligence to the jury. There was testimony to indicate defendant's driver, before turning, stopped on the right-hand side of the highway with her car facing to the southeast; that she allowed one car to overtake and pass on her left, or east lane; that she did not in any way signify she intended to proceed in front of plaintiff who was following not far behind this automobile; that she looked back and did not see the motorcycle, that she did not see it at all until the collision, although she stated her eyesight was good and there were no obstructions to her vision; that plaintiff, who had been traveling up to 20 miles an hour, slowed down to between 15 and 18; that he applied his brakes when near defendant's automo-

bile, turned to the left side of the road seeing defendant's automobile occupied the whole of the right or west half; that there was no shoulder on the righthand side of the highway but rather a ditch, and, believing the driver of defendant's automobile was waiting for him to pass as she had allowed the automobile to do, sounded his horn when about 100 feet away; that he could stop his motorcycle in 20 or 25 feet going 15 miles an hour; that defendant's driver jerked her car in front of him when he was 10 or 15 feet from it traveling south; that he attempted to avoid the collision by applying his brakes and steering toward the left ditch but was unsuccessful because of the swiftness with which events happened and the shortness of time, defendant's automobile being in motion until after the impact which occurred, according to plaintiff, on the east edge of the pavement. The trial court did not err in refusing to direct a verdict for the defendant at the close of plaintiff's case.

There was testimony plaintiff was driving more than 20 miles an hour. 1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 4697, Stat. Ann. § 9.1565), makes it unlawful to drive more than 20 miles an hour in a residential district, defined by 1 Comp. Laws 1929, § 4693 (Stat. Ann. § 9.1561), as the territory contiguous to a highway not comprising a business district when the frontage on such highway for a distance of 300 feet or more is mainly occupied by dwellings or by dwellings and buildings in use for business. The trial court left it to the jury to determine whether this collision occurred in a residential district. The testimony on this point is meager and inconclusive. Plaintiff only testified on the subject. In referring to the houses along the road, he

used the terms "real close," "quite separated," or "fewer," and "further apart." The meaning of these terms is indefinite and open to conjecture. Kipling is a community of about 200 inhabitants. Plaintiff was describing the density of residences along the highway for a space of a mile and a quarter. From the record, we cannot determine what the space was between the houses. Defendant might have introduced testimony on the point but let this question rest upon the indefinite testimony of plaintiff. The trial court did not err in this respect.

Defendant urges the trial court erred in instructing the jury about giving a signal before turning from a direct line and in reading to the jury the statute relating thereto.* It is claimed plaintiff needed no warning since defendant's automobile was pointed toward the southeast so that he knew defendant's driver intended to turn. Plaintiff had a right to have the jury determine whether he should have been apprised that the driver of defendant's automobile intended to start her car just as he was about to pass in front of her as his testimony indicated. It is insisted the failure of the driver of defendant's automobile to give a signal could not have any bearing on the cause of the accident and could not be the proximate cause thereof. Though plaintiff may have known the driver of defendant's automobile was going to turn to the east, he did not know when she would do so. Her automobile was stopped. If the jury believed plaintiff's testimony, the jury might consider the failure to give a timely warning in determining the proximate cause of the accident. The court did not err in this instruction.

Defendant urges the charges of negligence in the declaration and the theory of the manner in which

* See 1 Comp. Laws 1929, § 4711 (Stat. Ann. § 9.1579).—Reporter.

the accident happened as alleged therein were not substantiated by the evidence, and relies upon *Hartley* v. *A. I. Rodd Lumber Co.*, 282 Mich. 652, and the cases cited therein.    Plaintiff's declaration placed the defendant's automobile facing southerly.    His testimony indicated it was facing southeast.    A reading of the declaration and the testimony is not convincing that defendant was misled.

The case is one of fact.    The testimony was conflicting.    The truthfulness of the witnesses and the weight to be given to their testimony was for the jury.    We cannot say either the jury or the trial court was in error.    Other claimed errors are unimportant.

Judgment affirmed, with costs.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, CHANDLER, NORTH, and McALLISTER, JJ., concurred.