### WALLACE v. KRAMER.

1. PLEADING—AMENDMENT—DISCRETION OF COURT—SURPRISE—CONTINUANCE.

   Amendment of pedestrian's declaration against two motorists to conform to proofs so as to show that second defendant interfered with first defendant's view by abruptly cutting in front of him and concurrently causing accident wherein plain-

---

Standard of conduct as fixed by legislative enactment, see 2 Restatement, Torts, § 285 (a) and illustration (3).

Considerations important in considering whether negligent conduct is a substantial factor in producing harm, see 2 Restatement, Torts, § 433.

That both the actor and a third person are liable when the negligence of each contributes substantially to cause harm, see 2 Restatement, Torts, § 439.

tiff received severe and permanent injuries was not an abuse
of the trial court's discretion, where defendants' attorneys
could not have been surprised at the more elaborate statement
in the amendments and no adjournment or continuance was re-
quested (3 Comp. Laws 1929, § 14144).

2. AUTOMOBILES—NEGLIGENCE—EVIDENCE—WRONG SIDE OF ROAD—
   PEDESTRIANS—PROXIMATE CAUSE.
   Negligence of motorist who drove his car at an excessive speed
   on city street some 70 feet from curb to curb and at his left
   of center thereof so as to strike pedestrian standing about five
   feet left of center in part produced peril to pedestrian, where
   evidence showed that when car stopped it was three-fourths
   at left of center and about half of 92-foot skid mark was
   left of center line, notwithstanding fact that another car
   driven even faster had abruptly cut in front of first motorist
   and obstructed his view (1 Comp. Laws 1929, § 4697).

3. SAME—SKIDDING—SPEED—NEGLIGENCE—QUESTION FOR JURY.
   Skidding on slippery pavement may be a valid defense in some
   cases, but even then, if there is evidence of excessive speed,
   the case is for the jury to determine whether or not negligence
   existed.

4. NEGLIGENCE—SUDDEN EMERGENCY.
   The doctrine of ''sudden emergency'' is applicable only if the
   emergency has not been brought about by the party's own
   negligence.

5. AUTOMOBILES—NEGLIGENCE—EVIDENCE—SPEED—WRONG SIDE OF
   ROAD—PEDESTRIANS.
   Question as to whether first motorist was guilty of actionable
   negligence in the operation of his car was for jury where
   evidence shows he drove his car at an excessive speed near
   center of wide street or at his left thereof so as to strike
   pedestrian standing about five feet from center at motorist's
   left, notwithstanding second motorist who was driving at a
   greater speed cut in abruptly and obstructed first motorist's
   view of plaintiff pedestrian (1 Comp. Laws 1929, § 4697).

6. SAME—CONCURRENT NEGLIGENCE—OVERTAKING VEHICLES—QUES-
   TION FOR JURY.
   In action by pedestrian against two motorists, both of whom were
   driving at an excessive speed, whether second motorist who
   overtook, passed, and cut abruptly in front of first motorist
   so as to obstruct latter's view of plaintiff pedestrian who
   stood five feet at their left of center of street over 70 feet
   wide between curbs was guilty of concurrent negligence held,
   for jury (1 Comp. Laws 1929, § 4697).

7. APPEAL AND ERROR—INSTRUCTIONS—SIGNAL TO MOTORIST IN REAR.
   In action by pedestrian against two motorists, both of whom were operating their cars at an excessive speed, where evidence shows that second motorist overtook, passed, and cut abruptly in front of first motorist without having given any signal to first motorist of intention to turn from direct line, court's instruction to jury as to statutory duty of giving signal before turning from direct line was not prejudicial to the overtaking motorist (1 Comp. Laws 1929, § 4711).

8. AUTOMOBILES—PEDESTRIANS—USE OF STREETS.
   A pedestrian has a right to cross a street in the center of the block notwithstanding he knows it is a busy thoroughfare and there was heavy traffic at the time as a pedestrian has as much right upon a street as an automobile.

9. SAME—CONTRIBUTORY NEGLIGENCE OF PEDESTRIANS—CROSSING STREET IN MIDDLE OF BLOCK.
   Pedestrian who started to cross a street in the middle of a block where it was some 70 feet wide between curbs and who stopped five feet before reaching center of street, where he was hit by a car driven at an excessive speed and partially on the wrong side of the street just after it had been overtaken and passed by another car which had cut abruptly in front of first, was not guilty of contributory negligence as a matter of law (1 Comp. Laws 1929, § 4697).

10. EVIDENCE—ADMISSION OF PHOTOGRAPHS.
    Admissibility of photographs is largely within the discretion of the trial judge.

11. SAME—PHOTOGRAPHS—DISCRETION OF COURT—CORROBORATION.
    Admission of photographs of skid marks alleged to have been left by defendant's automobile at the scene of the accident was not an abuse of discretion although taken 12 days after the accident under the direction of an eyewitness who testified they were authentic, which was corroborated by testimony of another witness as well as by testimony of police officers who measured the original skid marks.

12. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ORDINANCES.
    A part of an ordinance which was not read to jury before which case now on appeal was tried will not be considered by the appellate court.

13. AUTOMOBILES—SPEED—BUSINESS AND RESIDENCE DISTRICTS—FRONTAGE.
    In figuring frontage on a highway in determining business and residence districts under statute relative to speed of automo-

biles, only that part of the land contiguous to the highway which is available for buildings should be included and frontage does not include cross streets, nor the space occupied by a sidewalk, nor any ornamental spaces in a plat between the sidewalks and the curb (1 Comp. Laws 1929, § 4693 [v, w]).

14. SAME—SPEED—NATURE OF DISTRICT—EVIDENCE—QUESTION FOR JURY.

In pedestrian's action against motorists alleged to have been driving at an excessive speed where plaintiff testified the scene of the accident was in a business district and testimony to the contrary was meager and inconclusive, leaving question to jury to decide whether it was a business or residential district *held,* proper (1 Comp. Laws 1929, §§ 4693 [v, w], 4697 [b]).

15. SAME—PEDESTRIANS—INSTRUCTIONS—JOINT TORTFEASORS.

In pedestrian's action against two motorists whose concurrent negligence is alleged to have caused his injuries, charge to jury which adequately instructed the jury in the application of statutes and ordinances to the individual defendants, stated plaintiff's theory as against each, and instructed jury they could find one or both defendants guilty or not guilty of actionable negligence was not erroneous in failing properly to define the issues as to the separate defendants.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted January 7, 1941. (Docket No. 22, Calendar No. 41,384.) Decided March 11, 1941. Rehearing denied May 21, 1941.

Case by William R. Wallace against Julius R. Kramer, Edward J. Kramer, and Albert L. LeGro for negligence resulting in injuries to the plaintiff when struck by an automobile. Verdict and judgment for plaintiff. From denial of motions for directed verdict, for judgment notwithstanding the verdict, and for new trial, defendants appeal. Affirmed.

*Walter Schweikart, Carl Schweikart,* and *Julien Winterhalter,* for plaintiff.

*Howard D. Brown (Louis M. Dyll* and *Hector Webber,* of counsel), for defendants Julius R. Kramer and Edward J. Kramer.

*Vandeveer & Haggerty (Fred L. Vandeveer,* of counsel), for defendant LeGro.

BUTZEL, J. William R. Wallace, plaintiff, was an employee of a landscape gardener who owned a lot on the south side of East Warren avenue between Bedford road and the Three Mile drive in the city of Detroit not far from the eastern city limits. At about 5:15 p.m. on May 10, 1939, plaintiff on leaving the lot attempted to cross in the middle of the block to go from the south to the north side of the avenue. Warren avenue east is over 70-feet wide from curb to curb and is divided in the center by metal disks inserted in the pavement to mark the division line for cars traveling from the west on the south side of the avenue and those coming from the east on the opposite side. It is a heavily traveled road. Plaintiff, upon reaching the south curb, waited for an opening in the traffic and then walked in a northerly direction until about 5 feet south of the center line of the avenue. He came to a complete standstill and, while awaiting an opportunity to proceed, he was struck down and very severely injured by an automobile driven from the east by defendant Edward J. Kramer. The car was being driven with the knowledge and consent of the owner, Julius R. Kramer, father of Edward. Both Kramers are made defendants, although in our discussion we refer to Edward Kramer as defendant Kramer, he being the driver of the car.

There is testimony that Kramer drove the car at a very rapid rate of speed in a westerly direction and that the car was very near the center line and came to a stop on the south or wrong side of the

street. Kramer admits he was driving in the "thirties." There was testimony that his speed exceeded 40 miles an hour; that he was racing his car with one driven by Dr. Albert LeGro, also defendant herein, who was traveling at a very high rate of speed, estimated by witnesses from 40 to 65 miles per hour, and who was attempting to pass the rapidly moving Kramer car; that when the Kramer car was some distance east of where plaintiff was standing, LeGro drove his car to the south of the Kramer car and then abruptly to the north side of the road so that Kramer's view of plaintiff was temporarily shut off; that when LeGro drove in front of the Kramer car and across its path, Kramer applied the brakes to his car with the result that the car skidded 92 feet and struck plaintiff and caused him very severe and some permanent injuries.

While there is testimony contradicting in a measure some of these facts as hereinbefore stated, there was sufficient proof of them to sustain the verdict of the jury. There is no substantial testimony to contradict the fact that plaintiff had come to a standstill on the south side of the road when he was struck down. The LeGro car did not touch plaintiff but it is claimed that the reckless manner in which it was driven was one of the concurrent causes of the accident.

The record discloses that Dr. LeGro slowed down and stopped after the accident and then drove on until his car was overtaken by an onlooker who jumped on the running board of another car that was passing, and Dr. LeGro returned to the scene of the accident. The jury returned a verdict of $10,000 against the defendants, who appeal.

Defendant Kramer claims that if there was any negligence, it was solely on the part of Dr. LeGro, who, on the other hand, contends that he was not at fault and rests the blame, if any, on the Kramer car.

The original declaration contained a count against Dr. LeGro, one against the Kramers and one against all defendants. It charged Kramer with operating a car at an excessive rate of speed on the wrong side of the street at the time of the accident and in violation of the State statutes and the city ordinances. It charged defendant LeGro with operating a car in a careless and reckless manner on the wrong side of the street at a high rate of speed and in violation of the State laws and city ordinances. In the third count, plaintiff charges all of the parties with concurrent acts of negligence.

At the trial of the case, Edward J. Kramer was called as an adverse witness and his testimony brought out many of the pertinent features in the case. After plaintiff had submitted his proofs, motions were made by the respective defendants for a directed verdict. The trial judge asked plaintiff's attorney to clarify his claims and an amendment to the declaration became necessary in order to permit recovery. The court allowed plaintiff to file amendments to the declaration (3 Comp. Laws 1929; § 14144 [Stat. Ann. § 27.838]) in order to conform to the proofs, and more particularly to show that Dr. LeGro interfered with the view of defendant Kramer by abruptly cutting in front of him and thus concurrently caused the accident. The amendment was largely in accordance with the testimony of defendant Edward J. Kramer. The attorneys for defendants could not have been surprised at the more elaborate statement in the amendments. No adjournment or continuance was requested. There was no abuse of discretion by the court in permitting the amendment. *Blake* v. *American Trust Co.*, 293 Mich. 618; *Paul* v. *University Motor Sales Co.*, 283 Mich. 587.

Defendant Kramer claims that defendant LeGro first drove to the south of him on the south side of

the road and then cut sharply to the north side and thus shut off the view between the Kramer car and plaintiff and because of LeGro's suddenly driving in front of him and along his path, he was forced to apply his brakes so suddenly that his car skidded to where plaintiff was standing, and that, therefore, if there is any liability at all, it is solely that of defendant LeGro. However, the testimony shows that Kramer was driving at an excessive rate of speed near the center of the street, and that he was passing traffic and racing with defendant LeGro. He skidded 92 feet, and approximately half of this distance he was on the wrong side of the street, and the skid ended with the car three-fourths of its width on the wrong side of the street; the car struck plaintiff about five feet south of the center line. The peril was produced in part at least by defendant Kramer's negligence. See *Adelsperger* v. *City of Detroit*, 248 Mich. 399. In this case, a bus in which plaintiff was passenger attempted to pass a car which suddenly turned into an intersection thereby causing the driver of the bus to make sudden application of the brakes and a sudden turn of the steering wheel, causing injury to plaintiff. Defendant contended that there was a sudden and unforeseen peril, and that the driver was compelled to do what he did in order to avoid a collision. The court held:

"In the instant case there is evidence of excessive and unlawful speed, which might be found to have important bearing on the suddenness and violence of the stopping and of the swerving of the bus, and hence a causal relation to plaintiff's injuries. A peril produced in part, at least, by defendant's negligence does not excuse the negligence. The case was for the jury."

Skidding on slippery pavement may be a valid defense in some cases, but even then, if there is evi-

dence of excessive speed, the case is for the jury to determine whether or not negligence existed. *K also v. Wilson,* 252 Mich. 520. The doctrine of "sudden emergency" is applicable only if the emergency has not been brought about by the party's own negligence. *Murner* v. *Thorpe,* 284 Mich. 331. See, also, *Collins* v. *Hull,* 256 Mich. 507.

There was evidence of excessive and unlawful speed which might be found by a jury to have an important bearing on the cause of the skidding and the difficulty of stopping the car and hence bore a causal relation to plaintiff's injuries There was a question of fact for the jury to determine whether the accident was not caused, in part at least, by Kramer's negligence.

Defendant LeGro claims that even if he drove at an excessive speed, the accident was the result of Kramer's independent negligence. There was testimony to show that LeGro was traveling at a rate of speed between 40 and 65 miles per hour on the wrong side of the street. Kramer testified that had LeGro not cut in and raced ahead of him, and crossed to the north side of the road, and shut off his vision, he might have avoided the accident, even at the speed he was going. It presented a question for the jury whether this was concurrent negligence and whether there were two contributing causes to the accident that concurred in producing the injury. See *Fitzcharles* v. *Mayer,* 284 Mich. 122 (3 N. C. C. A. [N. S.] 565); *Bordner* v. *McKernan,* 294 Mich. 411.

Defendant LeGro further contends that the trial court erred in instructing the jury that it was a statutory duty to give a signal before turning from a direct line.* There was testimony that LeGro cut

* See 1 Comp. Laws 1929, § 4711 (Stat. Ann. § 9.1579).—REPORTER.

sharply in front of Kramer. There is no indication that he gave any signal. Defendant was not prejudiced by the instruction.

It is further claimed that plaintiff was guilty of contributory negligence. Plaintiff had a right to cross the street in the center of the block notwithstanding the fact that he knew it was a busy thoroughfare and there was heavy traffic at the time. He came to a standstill in a place of safety where he and not the defendants had a right to be. It is not a case of plaintiff walking into the pathway of oncoming cars. He had reached a place of comparative safety and stood still until he was struck down through no fault of his own. He had as much right upon the street as an automobile. *Pearce* v. *Rodell*, 283 Mich. 19; *Burton* v. *Yellow & Checker Cab & Transfer Co.*, 283 Mich. 384; *Rentz* v. *Anhut*, 284 Mich. 695; *Carter* v. *C. F. Smith Co.*, 285 Mich. 621; *Marth* v. *Lambert*, 290 Mich. 557. He was not guilty of contributory negligence as a matter of law.

Error is claimed because of the introduction of photographs of skid marks allegedly left by the car of defendant Kramer at the scene of the accident. The photographs were taken 12 days after the accident under the direction of one of the eyewitnesses who testified that they were authentic. This was corroborated by another witness as well as in a general way by the testimony of police officers who measured the original skid marks. There was ample testimony to establish substantial identity in the present case and there was no error in admitting the photographs. Admissibility of photographs is largely within the discretion of the trial judge. *Amedeo* v. *Railway Co.*, 215 Mich. 37. Use of photographs of the scene taken some time after the accident has been permitted in negligence cases. *Pearce* v. *Rodell, supra.* While a minority of the court dif-

fered as to the application of the rule to particular facts relating to a photograph taken long after the alleged negligent acts, the rule was again reiterated by a majority of the court in *Perri* v. *Tassie,* 293 Mich. 464. It was brought to the knowledge of the jury that the photograph was taken 12 days after the accident and that the road is heavily traveled. Skid marks well impressed upon a concrete pavement may remain for a considerable length of time and are not quickly obliterated. We need not discuss whether it would have been an abuse of discretion on the part of the judge to refuse to admit the photographs. We hold that there was no abuse in permitting the introduction.

1 Comp. Laws 1929, § 4693 (Stat. Ann. § 9.1561), defines a business district and a residential district as follows:

"(v) 'Business district.' The territory contiguous to a highway when fifty per cent. or more of the frontage thereon for a distance of three hundred feet or more is occupied by buildings in use for business;

"(w) 'Residence district.' The territory contiguous to a highway not comprising a business district when the frontage on such highway for a distance of three hundred feet or more is mainly occupied by dwellings or by dwellings and buildings in use for business."

1 Comp. Laws 1929, § 4697 (Stat. Ann. § 9.1565), in effect at the time of the accident, provided:

"(b) Subject to the provisions of subdivision (a) of this section and except in those instances where a lower speed is specified in this act, it shall be prima facie lawful for the driver of a vehicle to drive the same at a speed not exceeding the follow-

ing, but in any case when such speed would be unsafe it shall not be lawful:

"Fifteen miles an hour on all highways in a business district as defined herein;

"Twenty miles an hour in a residence district, as defined herein, and in public parks unless a different speed is fixed by local authorities and duly posted."

The declaration charged violation of Detroit city ordinance 115-c, then in effect. Section 14, subdivisions (a) and (b), are substantially the same as the provisions of the above-quoted statutes. Subdivision (b) further provides that it shall be the duty of every police officer to make complaint against any person operating a motor vehicle at more than 30 miles per hour. This part of the ordinance was not read to the jury and cannot now be considered. Kramer's own testimony indicates that he was driving in the thirties, and it was further shown that LeGro was traveling at a far higher speed. As the case was presented to the jury, we have the testimony of plaintiff that the section where the accident occurred was a business district and that people cross the street in the center of the block "because there are business houses on each side all down there." A civil engineer in his testimony introduced a drawing which he had prepared to show the block between Three Mile drive and Bedford road and also extending 92 feet east of the curb of Three Mile drive. The map, however, did not disclose any of the property frontage west of Bedford road. It was confined chiefly to one block between Bedford road and Three Mile drive. It did not fully answer the question before the court. In figuring business frontage, only that part of the land contiguous to the highway which is available for buildings should be included. The frontage on the one block is 200

feet. What buildings there are west of there in the block to the west was not shown. Defendants have included the portions between the sidewalks and curbs and the streets themselves as frontage in estimating 300 feet. The term "frontage" in the statute can only mean space available for the erection of buildings thereon and does not include the cross streets nor the space occupied by a sidewalk nor any ornamental spaces in a plat between the sidewalks and the curb. The court left it to the jury to determine whether it was a business or residential district or either. *White* v. *Vandevelde*, 284 Mich. 669. We hold that this was proper due to the fact that plaintiff testified it was a business district and the testimony to the contrary was meager and inconclusive. Defendants might have introduced further testimony on this point but they did not do so. *DeVries* v. *Owens*, 295 Mich. 522.

The judge also read the part of the statute providing that the vehicles should be driven at a careful and prudent speed not greater than, nor less than, is reasonable and proper, due regard to be given to the traffic, surface, and width of the highway and of any other condition then existing, nor at a speed greater than will permit the driver to bring the vehicle to a stop within the clear distance ahead. 1 Comp. Laws 1929, § 4697 (Stat. Ann. § 9.1565).

Appellants finally contend that the trial court failed to define properly the issues as they applied to the separate defendants and was in error in failing to distinguish for the jury the applicability or nonapplicability of the various ordinances and statutes to each individual defendant. There is no merit in this contention of error. The statutes and ordinances that applied to both defendants required no explanation; while those which applied to one defendant and not to the other were distinguished

by the court by generally stating the claim of plaintiff against each defendant. Reading the charge in its entirety, we find that the jury was adequately instructed in the application of the statutes and ordinances to the individual defendants. The trial court properly protected the defendants by carefully stating plaintiff's theory as against each of them and instructing the jury that they could find one or both defendants guilty or not guilty of actionable negligence.

The judgment of the trial court is affirmed, with costs to plaintiff.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, and McALLISTER, JJ., concurred with BUTZEL, J. WIEST, J., concurred in the result.