
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
HENRY BASTIAN, DEFENDANT-APPELLANT.

Union County Court
Law Division—Criminal

Argued December 10, 1962—Decided December 17, 1962.

*Mr. John J. Dugan,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. H. Douglas Stine,* Prosecutor, attorney).

*Mr. George W. Morton, Jr.,* argued the cause for defendant-appellant.

*Mr. Earl Pollock,* as *amicus curiae,* argued the cause for the Borough of Kenilworth.

W. F. WOOD, J. C. C. This case comes before the court on appeal from a conviction in the Municipal Court of the Borough of Kenilworth of the offense of speeding. Specifically, defendant was convicted of operating a motor vehicle in a southerly direction on North Michigan Avenue at a speed in excess of 25 miles an hour in a "residence district" in violation of *N. J. S. A.* 39:4–98 (b). Defendant concedes that he was traveling 40 miles an hour; but he maintains that the area involved does not constitute a residence area and that the speed limit was therefore 50 miles an hour.

The only issue is whether North Michigan Avenue is a residence district as defined in *N. J. S. A.* 39:1–1. In order to resolve that issue it is necessary to be familiar with the area.

The appeal was heard on the basis of a transcript of proceedings in the Municipal Court. At my request the defend-

ant's attorney and the prosecutor submitted diagrams or maps of the area, which maps were not included with the original transcript. The map provided by the prosecutor was prepared by the borough engineer. Defendant's map is a photocopy of the borough tax map. There are no material differences between the two maps, except that each one contains details omitted from the other. The information set forth below was obtained from these maps and from an inspection of the area made by me personally.

North Michigan Avenue (hereinafter called the Avenue) runs in a generally northerly to southerly direction; but, in the area in question, the Avenue curves substantially toward the east as it extends southward. It is intersected on the westerly side, but not crossed, by Oak Street, which runs in an easterly to westerly direction. Approximately 97 feet west of this intersection, Oak Street itself is intersected on the southerly side by North 22nd Street, which also runs in a northerly to southerly direction. The latter street, however, does not curve toward the east like the Avenue; and, hence, these two roadways become farther and farther apart as they extend southward.

In the area of the alleged violation the easterly side of the Avenue is vacant land; but there are dwelling houses along the westerly side, beginning at a point 275.82 feet north of the Oak Street intersection and extending to a point 305.20 feet south of that intersection. The intersection itself is 90.13 feet wide. The area north of the houses, on both sides of the Avenue, is vacant land; and it is conceded that that area is a 50-mile zone.

There are five houses north of Oak Street. Four of these houses have their front entrances facing the Avenue and are known as 422, 418, 414, and 410 North Michigan Avenue. They set back approximately 25 feet from the westerly line of the Avenue and their front lines are approximately parallel thereto. The fifth house, which is located on the northwesterly corner of Oak Street and the Avenue and which is known as 520 Oak Street, has its front entrance on the latter street

and its easterly side facing the Avenue. Although the maps indicate that the latter side is not exactly in line with the front line of the four houses just discussed, the difference is hardly noticeable upon visual inspection of the area. There are no entrances on the easterly side of the fifth house and no walkways or driveways leading from that house to the Avenue.

South of Oak Street there are three houses with front entrances facing the Avenue, which houses are known as 314, 308 and 304 North Michigan Avenue. These houses also are set back approximately 25 feet from the Avenue and are approximately parallel thereto. Finally, there are two houses with front entrances facing the easterly side of North 22nd Street, one of these houses being located on the property at the southeasterly corner of Oak Street and North 22nd Street and the other being located on the property adjacent to that corner property. These two houses are known respectively as 321 and 317 North 22nd Street. These houses have rear entrances facing the Avenue; but there are no walkways or driveways leading from the houses to the Avenue. On the contrary, along the property line of the Avenue is an unbroken row of low hedge bushes, which indicate that no one is expected to enter upon the Avenue from those houses. These houses are parallel with North 22nd Street and, hence, are not parallel with the Avenue. It follows that their rear lines are at varying distances from the Avenue. The nearest point (the northeast corner of No. 321) is approximately 50 feet from the Avenue and the farthest point (the southeast corner of No. 317) is approximately 100 feet therefrom. There are approximately 12 tall trees in the space between these houses and the Avenue. No such trees exist between any of the other houses and the Avenue. House No. 317 has a wire fence about 50 feet from the rear of the house and parallel thereto; and this fence appears to mark the rear line of the landscaped lawn. This difference in landscaping tends to indicate that the property fronting on the Avenue is not part of the tract on which the house is located. The tax map (according to

the copy thereof submitted by defendant's attorney) describes the area along the Avenue opposite the rears of both of these houses, beginning at a point 16 feet from the southwesterly corner of Oak Street and extending a distance of 103.64 feet, as "vacant." In order to make the picture clearer, it is pointed out that the houses at 314, 308 and 304 North Michigan Avenue do not begin until a point approximately 135 feet south of the Oak Street intersection, so that there are no structures between the North 22nd Street houses and the Avenue.

Defendant's speed was checked by radar equipment at a point on the Avenue 20 feet south of the Oak Street intersection. If this area was a residence district, his speed of 40 miles an hour was excessive. Otherwise his speed was lawful. *State v. Miller*, 58 *N. J. Super.* 538 (*Cty. Ct.* 1959).

*N. J. S. A.* 39:1–1 defines a residence district as "that portion of a highway and the territory contiguous thereto, not comprising a business district, where within any 600 feet along such highway there are buildings in use for business or residential purposes which occupy 300 feet or more of frontage on at least 1 side of the highway." *N. J. S. A.* 39:4–98 prescribes a maximum speed of 25 miles an hour for any residence district.

At the time of the final argument on this appeal, Mr. Earl Pollock, attorney for the Borough of Kenilworth, appeared as *amicus curiae.* He and the prosecutor (who will hereinafter be referred to collectively as the prosecution) contended that the area of the alleged violation is a residence district. Defendant's attorney argued to the contrary. The dispute turns upon the questions of (1) whether the term "any 600 feet along such highway" includes intersections and (2) whether the buildings at 520 Oak Street and 321 and 317 North 22nd Street occupy frontage on the Avenue.

With respect to the first question, the prosecution takes the position that the distance within intersections should be excluded when calculating the 600 feet and that, in the instant case, the 275.82 feet of building-occupied area north

of the Oak Street intersection should be added to a sufficient distance (324.18 feet) south of the intersection to make up the 600 feet. There would be 300 feet of buildings occupying frontage within the 600 feet computed in that manner if (but only if) the house at 520 Oak Street is considered as occupying frontage on the Avenue. The 300 feet of buildings would be obtained by adding the combined front dimensions (totalling 287.17 feet) of the seven houses with front entrances facing the Avenue to the easterly side dimension (28.30 feet) of the house at 520 Oak Street, making a grand total of 315.47 feet. For reasons hereinafter stated, it is my view that the building at 520 Oak Street should be considered as occupying frontage on the Avenue. It therefore becomes necessary to determine the soundness of the prosecution's view as to the proper manner of computing the 600 feet.

The prosecution pointed out, as a basis for its view, that the more intersections there are in a given area, and the wider the intersections are, the less space there would be available for buildings and the less likelihood that there would be 300 feet of buildings within any uninterrupted 600 feet and further that the more intersections there are, the more dangerous the area would be. From these rather self-evident facts, it is urged that, in order to avoid the apparently anomalous result of having a more dangerous area (*i. e.* one having more intersections) with the higher speed limit than a less dangerous area, this court should read into the language of *N. J. S. A.* 39 :1–1 a requirement that intersections be excluded when computing the 600 feet. However, it is elementary that this court has no right to vary, under the guise of interpretation, the clear and unambiguous language of the Legislature.

The Legislature was not unmindful of the greater dangers at intersections. On the contrary, it provided specially for such dangers. Motorists are required to drive at an appropriate reduced speed when approaching and crossing an intersection. *N. J. S. A.* 39 :4–98.

In further support of its position that intersections should be excluded, the prosecution cited three cases from other states. *Wallace v. Kramer,* 296 *Mich.* 680, 296 *N. W.* 838 *(Sup. Ct.* 1941) ; *Mitchell v. Melts,* 220 *N. C.* 793, 18 *S. E. 2d* 406 *(Sup. Ct.* 1942) ; *Hinson v. Dawson,* 241 *N. C.* 714, 86 *S. E. 2d* 585, 50 *A. L. R. 2d* 333 *(Sup. Ct.* 1955). These cases dealt with statutes substantially different in language from our own. They are therefore not at all helpful here.

There is no room for doubt that the term "any 600 feet along such highway," as used by our Legislature, means 600 feet measured in an unbroken line, regardless of the presence or absence of intersections. The view of the prosecution must be rejected.

When the distance of 600 feet is properly measured, starting at the northerly line of the house at 422 North Michigan Avenue (*i. e.* the house farthest north), then the house at 304 North Michigan Avenue (*i. e.* the one farthest south), with a front dimension of 41.15 feet, falls outside that distance. This leaves only 246.02 feet of buildings with front entrances facing the Avenue within the 600 feet. It follows that, unless the house at 520 Oak Street (whose Michigan Avenue side is 28.30 feet) and those at 321 and 327 North 22nd Street (whose rears, which face the Avenue, are 41.15 feet and 41.10 feet, respectively) are deemed to occupy frontage on the Avenue, there are not 300 feet of buildings occupying such frontage within the 600 feet.

■ Since the last mentioned three houses do not have front entrances facing the Avenue, the question to be answered is whether, within the meaning of *N. J. S. A.* 39 :1–1, a building must itself front on a street in order to occupy frontage thereon. That question does not appear to have been definitely decided in this State. Defendant's attorney argued that the question was answered in the affirmative in the case of *State v. Zeus,* 56 *N. J. Super.* 323 (*Cty. Ct.* 1959). In that case Judge Barger of this court stated (at *p.* 329) that, in order for any given area to qualify as a residence district, there must be, within any 600 feet along the high-

way, buildings which "occupy at least 300 feet of building frontage" on at least one side of the highway. The term "building frontage," in its literal sense, does refer to the front of buildings. However, one cannot determine with certainty, from the language of the case, whether Judge Barger intended to use the term in that sense. If we assume that such was his intention, then it would follow that, under his ruling, none of these three houses occupy frontage on the Avenue.

I do not believe that Judge Barger used the term in its literal sense. The issue here present, that is, whether a building may occupy frontage on a street without itself fronting thereon, was not even before him. The only issue presented to him was whether the dimension of 300 feet applies to the measurement of the buildings themselves or to the measurement of the entire tracts of land upon which the buildings are located. Judge Barger ruled that the dimension applies to the buildings only. That ruling was, of course, entirely correct. To the same effect was *Melone v. Jersey Central Power & Light Co.*, 30 *N. J. Super.* 95 (*App. Div.* 1953). However, as already indicated, that ruling does not answer the question here presented.

To answer that question one must try to ascertain the intention of the Legislature when it adopted the statute. I was unable to find any recorded legislative history to aid in search for that intention. In the absence of such history, the apparent purposes of the statute may serve as a guide. Obviously, the primary purpose was to promote the safety of persons leaving and entering the buildings from the highway and also the safety of other persons using the highway in areas where the danger is increased by the greater amount of slowing, turning and consequent congestion. Another significant purpose was to provide a formula which would enable the motorist to recognize on sight, as he travels along, the character of the area which he is traversing. *State v. Zeus, supra.* The statute must be interpreted so as to give reasonable effect to both of these purposes.

The law of California (originally by judicial interpretation of, and now by amendment to, the statute) requires that a building, in order to have any bearing upon the character of the area along the highway, must have its entrance facing or leading to the highway. *Newton v. Thomas,* 137 *Cal. App. 2d* 748, 291 *P. 2d* 503 (*D. Ct. App.* 1956) ; *Adrian v. Guyette,* 14 *Cal. App. 2d* 493, 58 *P. 2d* 988 (*D. Ct. App.* 1936). Our statute contains no such requirement; and, because of the difference between the language of our statute and that of California, such a requirement may not properly be read into our statute by judicial interpretation.

■ It seems clear that, under our statute, a building may occupy frontage on a highway without itself actually fronting thereon and even without having any entrance facing or leading thereto. To hold otherwise would defeat the intent of the Legislature that there be a recognizable-by-observation test to determine the character of an area. A motorist might often have difficulty in observing, as he approaches an area, whether the front entrance of a building in that area, or even whether any entrance, faces or leads to the highway.

The presence or absence of entrances, walkways or driveways leading to the highway is one of the criteria for determining whether a building occupies frontage thereon, but certainly not the only criterion. Also important are such things as (1) the distance of the building from the highway, (2) the location of the building in relation to the other structures along the thoroughfare and (3) the presence or absence of uniform landscaping extending from the building to the thoroughfare.

■ I shall now apply the above criteria to the three houses in question. In view of the fact that the building at 520 Oak Street is located close to the Avenue and in approximate line with the houses that actually front thereon, I find that that building occupies frontage on the Avenue. This is so despite the absence of entrances facing, and of walkways or driveways leading to, that thoroughfare.

■ The buildings on North 22nd Street are quite different. In addition to the absence of driveways or walkways leading from the houses to the Avenue, the houses are set back from two to four times as far from the Avenue as the other houses in the area. Their lack of parallelism to the Avenue and the presence of trees between them and the Avenue are further circumstances which distinguish these two houses from the other buildings discussed herein. The only reasonable conclusion is that these two houses do not occupy frontage on the Avenue. Although these houses have rear doors facing the Avenue, that fact alone is clearly insufficient, in view of all the other circumstances, to warrant a finding that the houses occupy frontage on that thoroughfare.

■ The result is that, in the area in question, there are not 300 feet of buildings occupying frontage within 600 feet along the highway and that consequently the area is a 50-mile zone. Since defendant was driving within that speed limit, the complaint against him must be dismissed.

One further comment is in order. In reaching my conclusion that the North 22nd Street houses do not occupy frontage on the Avenue, I was not influenced by the fact that the tax map showed space between those houses and the Avenue as "vacant." Information from such sources as tax maps or deeds can have little or no bearing, insofar as the motor vehicle law is concerned, upon the determination of whether buildings occupy frontage on a highway. The reason is that such information is not visible to the traveling motorist. Although I referred to the tax map information in my above statement of facts, I did so merely because that information happened to be corroborative of the observable factors mentioned.

Defendant's attorney should submit an order in accordance with this opinion.